**Efthimios A. KARAHALIOS, Plaintiff,**

v.

**DEFENSE LANGUAGE INSTITUTE FOREIGN LANGUAGE CENTER PRESIDIO OF MONTEREY, and Local 1263, National Federation of Federal Employees, Defendants.**

**No. C–81–2745 RFP.**

United States District Court, N. D. California.

March 9, 1982.

Thomas R. Duffy, Monterey, Cal., for plaintiff.

Deborah Seymour, Asst. U. S. Atty., San Francisco, Cal., Paul Blankenstein and Mark Chavez, Dept. of Justice, Washington, D. C., for defendants.

## ORDER

PECKHAM, Chief Judge.

Efthimios Karahalios is employed by the Defense Language Institute ("DLI"), a federal agency, as an instructor of Greek. He has filed suit against DLI and Local 1263, National Federation of Federal Employees ("the union"), the exclusive representative of DLI employees. The events giving rise to the suit are as follows.

In early 1977, plaintiff was promoted from instructor (pay grade GS–9) to course developer (pay grade GS–11) through a competitive selection process. Shortly thereafter, Simon Kuntelos, another Greek instructor at DLI, filed a grievance.[1] He had been a course developer from 1963 until 1971, at which point his rank had been reduced to instructor as a result of the elimination of the course developer position. When the position became available again and was given to plaintiff, Kuntelos filed the grievance mentioned above. He was denied relief by DLI. The union then demanded that his grievance be arbitrated. The arbitrators decided that the competitive selection process which had been used to select plaintiff was erroneous. The position was reopened.

Throughout Kuntelos' grievance and arbitration, neither the union nor DLI notified plaintiff of the controversy. He was finally informed of the arbitrators' decision on February 21, 1978, and was told he could respond in writing. Kuntelos was ultimately awarded the position of course developer on April 6, 1978. Plaintiff's grade was reduced to GS–9.

Plaintiff filed grievances with DLI in May and October of 1978. They were denied on December 20, 1978. Plaintiff then requested that the union invoke arbitration.

It refused, on the grounds that advocacy of plaintiff's position would conflict with the union's previous advocacy of Kuntelos's position, and with the binding decision the arbitrators had made concerning Kuntelos' grievance. On January 17, 1979, plaintiff himself attempted to invoke arbitration. The union and DLI both refused to arbitrate.

On May 16, 1979, plaintiff filed unfair labor practice charges against the union and DLI, with the Federal Labor Relations Authority ("FLRA"). The Regional Director of the FLRA decided not to file complaints against either the union or DLI. Plaintiff requested that the General Counsel of the FLRA review this decision. The General Counsel affirmed the Regional Director's decision with respect to the charge against DLI, but reversed as to the union, finding that, by deciding not to invoke arbitration on plaintiff's behalf, the union had violated its duty to represent all members of the bargaining unit equally. The General Counsel directed the Regional Director to issue a complaint against the union, absent settlement. The union and the Regional Director reached a settlement agreement whereby the union would notify its members that, in future, it would not inform employees that it could not represent more than one employee seeking the same position. The settlement agreement afforded no relief to plaintiff as an individual. Plaintiff requested that the General Counsel review the settlement as to the union, and reconsider the decision not to issue a complaint against the DLI. Both requests were denied.

Plaintiff then filed this action. In his First Amended Complaint, he alleges that the union breached its duty of fair representation, and that DLI breached the collective bargaining agreement. In addition, he asserts two constitutional claims against DLI. Both defendants filed motions to dismiss the claims relating to the labor disputes, arguing that this court lacks subject

---

1. Unlike plaintiff, Kuntelos is a member of the union and of the union's board of directors.

matter jurisdiction over them.[2] In addition, DLI moved to dismiss the constitutional claims.

I. *Subject Matter Jurisdiction Over Unfair Representation and Breach of Collective Bargaining Agreement Claims*

A. *Applicable Body of Law*

Prior to January 11, 1979, labor-management relations in the federal service were governed by Executive Order 11491, as amended. 5 U.S.C.A. § 7101, note. That order authorized federal employees to form labor organizations. It also set up an administrative scheme for enforcing the provisions of the order. It did not provide a role for the federal judiciary in this scheme. Defendants argue that the order is controlling, and that, as a result, this court has no jurisdiction over any of plaintiff's claims concerning labor-management relations in the federal sector.

Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* ("the Act") revised the administrative procedures set forth in Executive Order 11491, and provided opportunities for limited judicial review not previously available. Thus, the first question we must address is which body of law applies to the instant case—the Executive Order, or the Act.

The Act became effective on January 11, 1979. A savings clause makes the Act inapplicable to cases instituted before its effective date:

> No provision of this Act . . . shall affect any administrative proceedings pending at the time such provision takes effect. Orders shall be issued in such proceedings and appeals shall be taken therefrom as if this Act had not been enacted.

5. U.S.C.A. § 1101, note (Supp.1981). Under the savings clause, the question is whether any administrative proceedings were pending in the present case on January 11, 1979. If such proceedings were pending, the Executive Order applies. If there were no proceedings pending on January 11, 1979, the Act applies.

The most recent version of the federal regulations issued during the transition from the Executive Order to the Act indicates that in order for an administrative proceeding to have been "pending" as of January 11, 1979, such that the old Executive Order should apply, the proceeding must have been filed with the FLRA by that date. It is not enough for the events triggering the administrative proceeding to have occurred prior to January 11, 1979:

> § 2400.2 Processing of unfair labor practice, representation, grievability/arbitrability and national consultation rights cases.
>
> All unfair labor practice, representation, grievability/arbitrability and national consultation rights cases pending before the Assistant Secretary and the Vice Chairman on December 31, 1978 (including cases the time limit for which an appeal to the Council has not expired under the Council's rules and regulations), all such cases pending before the Council on December 31, 1978, and all such cases filed with the Authority during the period January 1 through January 10, 1979, shall be processed by the Authority in accordance with the Rules and Regulations [promulgated under the Executive Order].

5 C.F.R. 845 § 2400.2 (1981). *Compare* earlier version at 5 C.F.R. 642 § 2400.2 (1979). It is true, as defendants state, that the transitional regulations are for the internal use of the FLRA and are not binding on the courts. But they are not inconsistent with the savings clause, which *is* binding upon the courts.

■ If analyzed under the transitional regulations of the FLRA, the present case would be governed with the new Act, for, although the events which gave rise to this action all occurred prior to January 11, 1979, Karahalios filed his unfair labor practice charges with the FLRA on May 16, 1979, well after the effective date of the new Act. The language of the savings clause, as well as the FLRA's transitional

**2.** The union requests summary judgment, in the alternative.

regulations, indicate that the present lawsuit should be governed by the new Act, rather than by the old Executive Order. We so hold.[3]

### B. Subject Matter Jurisdiction Under the Civil Service Reform Act of 1978

Defendants contend that, even if the present action is governed by the new Act, as we have held, the federal district courts lack subject matter jurisdiction over actions such as the present one. The new Act does provide a role for the federal judiciary, but, as defendants point out, that role is narrowly circumscribed.[4] In contrast, Congress has entrusted a broad range of functions to the FLRA, the specialized agency which administers and enforces the provisions of the Act.[5]

It is defendants' contention that plaintiff is simply alleging that defendants have committed unfair labor practices under 5

---

**3.** The Merit System Protection Board ("MSPB") has construed the savings clause in a different fashion:

> "Pending" is considered to encompass existing agency proceedings, and appeals before the Board or its predecessor agencies, that were subject to judicial review or under judicial review on January 11, 1979, the date on which the Act became effective. *An agency proceeding is considered to exist once the employee has received notice of the proposed action.*

44 Fed.Reg. 38349, 38360–61 (1979) (emphasis added). Under that interpretation, the present action would be governed by the Executive Order, since Karahalios received notice of the reduction in pay grade on February 21, 1978, and an agency proceeding thus "existed" on that date.

The MSPB interpretation of the savings clause—that an agency proceeding exists if the contested personnel action occurred prior to January 11, 1979—has apparently been followed only in appeals from MSPB decisions. *See, e.g., Ellis v. Merit Systems Protection Board,* 613 F.2d 49 (3d Cir. 1980); *Kyle v. Interstate Commerce Commission,* 609 F.2d 540 (D.C.Cir.1980); *Motley v. Secretary of the United States Department of the Army,* 608 F.2d 122 (5th Cir. 1979). The courts have been inclined to "[respect] the Board's interpretation of the savings clause . . . in accordance with the judicial deference usually accorded to the interpretation made by the agency charged with a statute's administration." *Kyle v. Interstate Commerce Commission, supra,* 609 F.2d at 542. The rationale for the interpretation given the savings clause in MSPB appeals appears to turn upon the statute of limitations for judicial review of actions brought before the MSPB. Under the new Act, a petition for appellate review of a decision by the MSPB must be filed within 30 days of the Board's final order—a significantly shorter filing period than the six years afforded under prior law. The courts were concerned that any case even arguably covered by the prior law should be afforded the more liberal statute of limitations period, given that individuals who had experienced adverse personnel actions prior to January 11, 1979 may have been relying upon the six year time for filing. Thus, the courts adopted the MSPB's expansive view as to when the prior law should control. *Id.* No such difficulties concerning the statute of limitations exist in cases of the present nature. The instant case is not an appeal from an administrative agency, arguably controlled by conflicting statutes of limitations. Consequently, in the context of an action for breach of the duty of fair representation and breach of a collective bargaining agreement, we are disinclined to follow the somewhat tortuous reading of the savings clause given in appeals from MSPB decisions.

**4.** The Act explicitly empowers the federal courts to act in only three instances. (The National Labor Relations Act ("NLRA") contains parallel provisions empowering the federal courts to act in the context of private sector labor management relations.) First, the Act makes judicial review of final orders of the FLRA available to any aggrieved party, in the court of appeals. 5 U.S.C. § 7123(a). (*Cf.* 29 U.S.C. § 160(f).) Second, it provides that the FLRA may itself petition the court of appeals for the enforcement of any FLRA order and for appropriate temporary relief or restraining orders. 5 U.S.C. § 7123(b). (*Cf.* 29 U.S.C. § 160(e).) Third, the FLRA, upon issuing an unfair labor practice complaint, may petition a federal district court for temporary injunctive relief. 5 U.S.C. § 7123(d). (Cf. 29 U.S.C. § 160(j).)

**5.** The FLRA is responsible for providing leadership in establishing policies and guidance relating to matters covered by the Act, and has responsibility for carrying out the purposes of the Act. 5 U.S.C. § 7105(a)(1). The FLRA is also the body which handles unfair labor practice charges "in a manner essentially identical to National Labor Relations Board practices in the private sector." S.Rep.No. 969, 95th Cong., 2d Sess. 106 (1978). The procedures for handling unfair labor practice charges are outlined at 5 U.S.C. § 7118, as are the FLRA's remedial powers, which include the issuance of cease and desist orders and of orders requiring reinstatement and back pay. 5 U.S.C. § 7118(a)(7).

U.S.C. § 7116, and that plaintiff's claims are therefore under the exclusive jurisdiction of the FLRA, just as most conduct arguably protected by the NLRA or arguably prohibited by its unfair labor practices provisions is under the exclusive jurisdiction of the *National Labor Relations Board. Amalgamated Association of Street, Electric Railway and Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Thus, they say, plaintiff cannot bring an action for breach of the duty of fair representation and breach of the collective bargaining agreement in federal district court. His only recourse is to pursue his administrative remedies (which he has done), and then appeal to the Ninth Circuit from a final order of the FLRA.

This is evidently a case of the first impression on this question. The jurisdiction of the federal courts under the Act has so far been decided only in contexts in which the plaintiff has requested injunctive relief. *See, e.g., United States v. Professional Air Traffic Controllers Organization (PATCO)*, 653 F.2d 1134 (7th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981) (district court did have jurisdiction to enjoin strike); *National Federation of Federal Employees, Local 1263 v. Defense Language Institute*, 493 F.Supp. 675 (N.D.Cal.1980) (district court lacked jurisdiction to grant plaintiff union an injunction requiring defendants to bargain over the impact of a proposed reduction in force); *Clark v. Mark*, Case No. 79–CV–777 (N.D.N.Y.1980) (district court lacked jurisdiction to grant union injunctive relief requiring employer to enforce the terms of a collective bargaining agreement). We have located no cases which consider whether an action for *damages* of the present sort can be maintained in federal court.

The damages action consists of two components: the suit against the union and the suit against the employer. They are analyzed separately below.

1. *Alleged breach of duty of fair representation by the union.* As the parties have suggested, the key analogy here is the manner in which labor relations are handled in the private sector. The duty of fair representation owed by a union to the members of its bargaining unit has been found in both the NLRA, *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), and the Railway Labor Act ("RLA"), *Tunstall v. Brotherhood of Locomotive Firemen and Engineermen*, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); *Steele v. Louisville & Nashville Railway Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944),—not in any express provision, but implicit in the statutes themselves. *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, n.8, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 66–7 n.2, 101 S.Ct. 1559, 1565–1566 n.2, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring). The cause of action against a union for breach of the duty of fair representation, then, arises under federal law; and the district courts have federal question jurisdiction over such a claim. Similarly, in the Civil Service Reform Act of 1978, there is an implied duty of fair representation owed by a union to all members of the bargaining unit, despite the fact that there is no explicit provision establishing such a duty. Moreover, just as the implicit duty of fair representation gives rise to a cause of action under the NLRA and the RLA despite the otherwise narrowly limited role of the courts under those statutes, the implied duty of fair representation in the Civil Service Reform Act should be enforceable in the district court under 28 U.S.C. § 1331.

This is especially true since one of the primary rationales for allowing such actions under the NLRA and the RLA is equally applicable to actions such as the present one. The rationale is that the administrative boards set up under the various labor acts are more concerned with broad questions of policy than with individuals, so that if individuals are not allowed to enforce the

duty of fair representation in court, they may gain no practical benefit from the labor laws. *See Vaca v. Sipes, supra,* 386 U.S. at 182–83, 87 S.Ct. at 912–913.

■■■■ The subordination of the individual's interests to the interest of the group by the administrative board is precisely what has occurred in plaintiff's case. The FLRA settled his unfair practices charge against the union instead of issuing a complaint; and the settlement granted no relief to plaintiff in connection with what FLRA did conclude was an unfair labor practice by the union. The board was concerned only with preventing *future* abuses by the union. Plaintiff, then, lacks an adequate administrative remedy as did the petitioner in *Vaca v. Sipes.* He should be allowed to seek relief against the union in this court for the same reason that aggrieved employees in the private sector are allowed to sue their unions in federal court for breaches of the duty of fair representation. Accordingly, we hold that there is implicit in the Civil Service Reform Act a duty of fair representation owed by a union to the members of the bargaining unit, and that we have federal question jurisdiction over actions arising from breaches of this duty. Defendants' motion to dismiss the First Cause of Action is therefore denied. Defendant union's alternative motion for summary judgment is likewise denied.

2. *Alleged breach of the collective bargaining agreement by DLI.* Under the NLRA and the RLA, dual-pronged actions are allowed, in which an aggrieved employee sues the union for breach of the duty of fair representation and the employer for breach of the collective bargaining agreement. We have discussed the first prong of such actions above and will now discuss the second.

In NLRA suits, the second prong of the suit has a statutory basis in section 301 of the Act. *Vaca v. Sipes, supra,* 386 U.S. at 183–84, 87 S.Ct. at 913–914. There is no parallel provision in the Civil Service Reform Act which would explicitly empower federal courts to hear actions alleging breaches of collective bargaining agreements by federal agencies. Defendants maintain that this lack of specific statutory authority precludes this court from hearing the present action. However, two-pronged actions can also be maintained against unions and employers subject to the RLA, *Glover v. St. Louis-San Francisco Railway Co.,* 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Bagnall v. Air Line Pilots Association, Int'l,* 626 F.2d 336 (4th Cir. 1980), *cert. denied,* 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981), despite the fact that the RLA does not contain a provision similar to section 301 of the NLRA. This suggests that the question whether an employee can sue an employer for breach of a collective bargaining agreement negotiated pursuant to the Act does not turn on the existence *vel non* of an explicit statutory provision within the Act, authorizing such an action.

The suit for breach of a collective bargaining agreement brought against an employer subject to the NLRA or the RLA is essentially a common law action for breach of contract. *See Vaca v. Sipes, supra; Rumbaugh v. Winifrede Railroad Co.,* 331 F.2d 530 (4th Cir. 1964), *cert. denied,* 379 U.S. 929, 85 S.Ct. 322, 13 L.Ed.2d 341 (1964). Thus, we consider whether plaintiff might restate his cause of action as one for ordinary breach of contract against DLI, a federal agency, and so establish federal jurisdiction under 28 U.S.C. § 1346. DLI would argue that since, in general, employees of the federal government hold their positions by appointment rather than by contract, *see, e.g., United States v. Hopkins,* 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976), no federal employee has a cause of action against a federal employer for breach of a collective bargaining agreement.

While it is true that, traditionally, employment relations in the public sector have not been defined by contract, Congress, through the Civil Service Reform Act, has indicated that the federal government may now enter into collective bargaining agreements with unions which represent federal employees. The effect that this develop-

ment will have upon the manner in which federal employees hold their employment is still uncertain, and is likely to become known only slowly, as the new Act is interpreted, and as the relationships between the new Act and the NLRA and RLA are explored. However, it is clear, at the very least, that a collective bargaining agreement under the Act is an agreement between a federal agency and a union similar to the agreements between private employers and unions under the NLRA and the RLA.

When a union representing private sector employees breaches its duty of fair representation, "individual union members may sue their employers . . . for breach of a promise embedded in the collective-bargaining agreement that was intended to confer a benefit upon the individual." *Amalgamated Ass'n of Street, Electric Railway and Motor Coach Employees v. Lockridge*, 403 U.S. 274, 298–99, 91 S.Ct. 1909, 1923–1924, 29 L.Ed.2d 473 (1971). The determination as to whether the parties intended to confer such a benefit upon the individual is to be made by reading the collective bargaining agreement in light of "the common law of a particular industry or of a particular plant," *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960). Our task, then, narrowly defined, is to determine whether Congress could have intended collective bargaining agreements between federal agencies and unions to confer benefits upon federal employees in the same way that collective bargaining agreements in the private sector confer benefits upon the employees of private employers.

We do not suggest that the relationship between a federal employer and its employees becomes a "contractual" one in all respects by virtue of the negotiation of a collective bargaining agreement. Federal employers have traditionally had wide discretion in matters of employment relations for reasons of public policy. This discretion

has been manifest in the freedom of the federal employer from contractual restraints upon relations with employees. However, it would be incongruous to suggest that Congress intended the Civil Service Reform Act to have no effect on the traditional structure of labor relations in the federal sector. When a federal agency becomes a party to a collective bargaining agreement, it, no less than its counterpart in the private sector, helps to create a code defining the rights and duties of the parties. Insofar as the collective bargaining agreement elicits from the federal agency promises which are "intended to confer a benefit upon the individual," *Amalgamated Ass'n etc. v. Lockridge, supra*, 403 U.S. at 299, 91 S.Ct. at 1924, those promises should be binding upon the federal agency just as they would be on a private employer.

When the courts are called upon to determine whether a benefit has been conferred upon a federal employee by a collective bargaining agreement, any ambiguity in the agreement is likely to be construed in light of the preference for granting federal agencies wide discretion in matters of employment. This preference for discretion must necessarily form a part of the "common law" of the federal agency. But, given this limitation upon the benefits likely to be conferred upon federal employees, we are unwilling to state that a collective bargaining agreement between a federal employer and a union can never confer a benefit upon an individual employee.

That being said, however, we find that the action by this plaintiff against his employer cannot be maintained. If it is to be entertained by this court, it must be brought under 28 U.S.C. § 1346, subject to the limitations of that statute. Plaintiff has only alleged federal question jurisdiction, which is inapplicable to actions for breach of contract against the federal government. Accordingly, the Second Cause of Action must be dismissed, with leave to amend, for lack of subject matter jurisdiction.[6]

---

**6.** If plaintiff chooses to amend his complaint, he should indicate the amount of the damages he is requesting, so that we can determine whether this case falls within the jurisdictional

## II. Constitutional Claims

As noted above, plaintiff alleges constitutional violations by DLI. Specifically, the Third Cause of Action alleges that, by arbitrating Kuntelos' grievance without affording plaintiff notice and a hearing, DLI deprived plaintiff of property without due process of law, in violation of the fifth and fourteenth amendments. The Fourth Cause of Action alleges that the collective bargaining agreement, as applied by DLI, violates the equal protection clause of the fourteenth amendment by denying arbitration to employees who cannot be represented at arbitration by their union and by effectively denying collective bargaining representation to such employees.

■ The two fourteenth amendment claims must be dismissed. The fourteenth amendment only covers *state* action, and has no applicability in an action, like the present one, against a *federal* entity. Thus, of the constitutional claims, there remains for consideration only the action brought under the fifth amendment due process clause.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the . . . protection of liberty and property." *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Plaintiff alleges that he had a property interest in the course developer position which entitled him to certain procedural guarantees. In order to establish such a property interest, plaintiff must establish that he had a "legitimate claim of entitlement" to the position, and not merely an "abstract need or desire" for the position, or a "unilateral expectation" of it. *Board of Regents v.*

*Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 577. *See also Perry v. Sindermann*, 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972). Plaintiff alleges that his property right arises from the fact that he could be removed from the course developer position only for just cause.

■ Federal employees can be removed only for cause if they are either in the "competitive service," or are in the "excepted" (noncompetitive) service but are "preference eligible"—i.e., Veterans. 5 U.S.C. § 7511(a)(1)(A)–(B); § 7513. Plaintiff was not covered by either of these provisions. Pursuant to 5 C.F.R. 213.3107(a), the positions of course developer and language instructor are excepted from the competitive service. As a non-Veteran in the excepted service, plaintiff was not entitled to procedural guarantees under the statute. *Cf. Paige v. Harris*, 584 F.2d 178, 181 (7th Cir. 1978). Thus, in order to show that he was entitled to such guarantees, he must prove that the guarantees were established by, or otherwise binding upon, his employing agency. *Board of Regents v. Roth, supra; Colm v. Vance*, 567 F.2d 1125, 1127–28 (D.C. Cir.1977).

Plaintiff contends that the collective bargaining agreement, which is binding upon DLI, provides that he cannot be dismissed without just cause. If that were true, it would give rise to a property right. However, it appears that plaintiff has misconstrued the collective bargaining agreement. The agreement provides that "*[f]ormal disciplinary actions* include written reprimands, suspensions, demotions, and removals, and *will be taken only for just cause.*" Article XVI, § 2B of the May 5, 1976 collec-

---

amount requirement imposed upon us by 28 U.S.C. § 1346. If the action is for an amount greater than $10,000, we lack jurisdiction over it. The Court of Claims would, however, have jurisdiction. The fact that plaintiff would not be able to proceed against the union in the Court of Claims should not preclude the Court of Claims from hearing the breach of contract claim against the federal agency. *Cf. Clayton v. ITT Gilfillan*, 623 F.2d 563 (9th Cir. 1980), *aff'd in part, rev'd in part sub nom Clayton v.*

*International Union, United Automobile, etc.*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215 (6th Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979). Of course, in order to prevail in such an action before the Court of Claims, plaintiff would still need to prove that the nonparty union breached its duty of fair representation, as a predicate to establishing DLI's alleged liability for breach of the collective bargaining agreement.

tive bargaining agreement (emphasis added). See also Article XXII of the May 15, 1978 collective bargaining agreement. The reduction of plaintiff's grade from GS–11 to GS–9 was not a disciplinary action. Thus, the reduction in grade was not governed by the "just cause" provision of the collective bargaining agreement, which, by its terms, is applicable only to disciplinary actions. Instead, it appears to be governed by 5 U.S.C. § 7106(a)(2)(A), which, in relevant part, indicates that ". . . nothing in this chapter shall affect the authority of any management official of any agency . . . (2) in accordance with applicable laws—(A) to hire, assign, direct, layoff and retain employees in the agency . . ."

 Plaintiff correctly asserts that, even if the explicit language of the applicable rules, regulations, and collective bargaining agreement provisions do not create a constitutionally protected property interest, a property interest may arise from "understandings, promulgated or fostered by . . . officials, that may justify . . . [a] legitimate claim of entitlement to continued employment absent 'sufficient cause.'" *Perry v. Sindermann, supra*, 408 U.S. at 602–03, 92 S.Ct. at 2700. He has alleged that such understandings exist. His complaint is thus adequate to withstand DLI's motion to dismiss.[7]

 However, we are in agreement with DLI's contention that the sovereign immu-

nity doctrine bars plaintiff's recovery of damages other than lost wages for the alleged violation of due process.[8]

It long has been established, of course, that the United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. [584], at 586, 61 S.Ct. 767, 85 L.Ed. 1058. And it has been said, in a Court of Claims context, that a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. [1] at 4 [89 S.Ct. 1501, 23 L.Ed.2d 52].

*United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). Plaintiff has suggested no meritorious theory upon which we can hold that the United States has agreed to pay all damages resulting from constitutional torts of this nature.

First, he contends that the United States waived sovereign immunity through the passage of the Civil Service Reform Act, which subjects the federal government to damages liability. However, as plaintiff's cause of action for due process violations was brought under the constitution and not under the Civil Service Reform Act, it is immaterial for purposes of the present discussion whether sovereign immunity has been waived as to actions brought under

---

**7.** We would note, however, that in order to prevail in later stages of this action, plaintiff would have to present some concrete basis for his understanding that he could not be demoted without just cause in the present, nondisciplinary context. "[A] legitimate claim of entitlement must derive from some reasonably identifiable source apart from the mere expectancy or desire of the claimant." *Colm v. Vance, supra*, 567 F.2d at 1129. *See also Perry v. Sindermann, supra; Sims v. Fox*, 505 F.2d 857, 861–62 (5th Cir. 1974), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975). Moreover, although "[a]n entitlement may spring from an understanding, . . . the understanding must be 'mutually explicit.'" *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1099 (9th Cir. 1981), quoting *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709.

**8.** Our decision to this effect is not inconsistent with *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). There, the Supreme Court held that the doctrine of sovereign immunity does not bar an action for damages against federal officials in their individual capacity for violation of the constitutional right to due process under the fifth amendment. It did not hold that sovereign immunity is waived where relief will come from the sovereign itself, as in the present action. *See Beller v. Middendorf*, 632 F.2d 788, 798 n.5 (9th Cir. 1980) *cert. denied sub nom Beller v. Lehman*, 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981) and *Miller v. Weinberger*, —— U.S. ——, 102 S.Ct. 304, 70 L.Ed.2d 150 (1981).

the Act. The question is whether sovereign immunity has been waived as to constitutional torts such as the one alleged by plaintiff.

Plaintiff next contends that sovereign immunity has been generally waived by the Tucker Act, 28 U.S.C. § 1346, which grants the district courts and the Court of Claims jurisdiction over claims against the United States based upon violation of the United States Constitution, statutes, or regulations. Since plaintiff is alleging a constitutional violation, he maintains that damages may be awarded under the Tucker Act. However, the Tucker Act is the statute which the Supreme Court was discussing in *Testan* when it held that a statute which is purely jurisdictional does not waive sovereign immunity. Such a statute only ensures the litigant that a claim of the variety enumerated may be pursued in the appropriate federal forum. A different statute must be looked to for the substantive right to collect money damages. There is no such statute generally waiving sovereign immunity as to money damages arising from a fifth amendment due process violation. *Cf. Conservative Caucus, Inc. v. United States,* 650 F.2d 1206, 1211–12 (Ct.Cl.1981); *Alabama Hospital Ass'n v. United States,* 656 F.2d 606 (Ct.Cl.1981); *Carruth v. United States,* 627 F.2d 1068 (Ct.Cl.1980); *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1007–09 (Ct.Cl.1967).

Third, plaintiff contends that the Back Pay Act, 5 U.S.C. § 5596, "creates a cause of action for money damages arising from adverse personnel actions taken by the federal government against its employees." Plaintiff's Opposition to Defendants' Motions to Dismiss, at 30. In fact, the Back Pay Act only authorizes *"retroactive recovery of wages* whenever a federal employee has 'undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part of' the compensation to which the employee is otherwise entitled." *United States v. Testan, supra,* 424 U.S. at 405, 96 S.Ct. at

957 (emphasis added). Thus, plaintiff, if he prevails against DLI on his constitutional claim, may recover only back pay, and not general compensatory damages of the variety which he has requested in connection with his Third Cause of Action. Accordingly, DLI's motion respecting the question of damages is granted to the extent just indicated.

In summary, we have denied defendants' motion to dismiss plaintiff's claim against the union for breach of the duty of fair representation. We have federal question jurisdiction over that claim. We have granted, with leave to amend, defendants' motion to dismiss plaintiff's claim against DLI for breach of the collective bargaining agreement. We lack federal question jurisdiction over that claim. Plaintiff may, however, file an amended complaint restating the claim as a cause of action for breach of contract against a federal agency under 28 U.S.C. § 1346, subject to the jurisdictional amount requirements of that statute.

As to the constitutional claims, we have dismissed those which were brought under the fourteenth amendment. We have denied DLI's motion to dismiss the fifth amendment due process claim, as plaintiff has sufficiently alleged a property interest arising from understandings promulgated by DLI officials. However, if plaintiff prevails on this claim, he may recover only back pay, as sovereign immunity bars the recovery of general compensatory damages in an action of this nature.

SO ORDERED.