Sharon K. PHAM, Plaintiff-Appellant,

v.

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, LOCAL 916, AFL–CIO, Defendant-Appellee.

No. 85–1263.

United States Court of Appeals, Tenth Circuit.

Aug. 26, 1986.

Sylvia Marks-Barnett, Oklahoma City, Okl., for plaintiff-appellant.

Steven M. Angel of Hughes & Nelson, Oklahoma City, Okl., for defendant-appellee.

Before McKAY, LOGAN and MOORE, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

This is an appeal from the granting of a motion to dismiss in an action for breach of the duty of fair representation instituted by a former federal employee against her union. The trial court held it had no subject matter jurisdiction over the action because in the adoption of the Civil Service Reform Act of 1978, Congress had restricted to the Federal Labor Relations Authority exclusive jurisdiction over disputes between federal employees and their unions. We conclude such was not the intent of Congress and reverse.

I.

After seven years of employment by the United States Department of the Air Force, appellant Sharon K. Pham was notified she was to be removed from her position as a supply clerk at Tinker Air Force Base. She contacted a representative of her union, defendant American Federation of Government Employees, Local 916, AFL–CIO (Union or defendant). Because the Union had entered into a collective bargaining agreement with the Air Force, Ms. Pham sought advice on the procedure to invoke a grievance over her removal.

Ms. Pham was advised she could either proceed through the scheme established in the collective bargaining agreement, or she could initiate a grievance with the Merit System Protection Board (MSPB). Ms. Pham elected to follow the statutory procedure before the MSPB and prepared the necessary forms for the Union to submit. For some reason unexplained in the record, though the papers were completed, they were not promptly filed by the Union. When the error was discovered, the papers were mailed, but the mailing was ninety days late and untimely under 5 C.F.R. § 1201.115(b) (1986). Consequently, the grievance was dismissed, and an appeal by the Union was denied by the MSPB. Although Ms. Pham was informed of these circumstances, the record is unclear about when she learned the Union had failed to timely file her grievance.

Ms. Pham subsequently initiated a complaint in state court against the Union averring the Union had breached its contract with her and its duty of fair representation owed to her under the collective bargaining agreement. The action was removed to the United States District Court by the Union, which then moved to dismiss on jurisdictional grounds.

In its motion to dismiss, the Union argued that the complaint brought by Ms. Pham was within the exclusive remedy of the Civil Service Reform Act of 1978 (CSRA). Describing the duty of fair representation as an express component of a complex federal regulatory scheme, the

Union argued Ms. Pham's private suit was preempted by the Labor-Management and Employee Relations Act, 5 U.S.C. § 7101 *et seq.* (the Act), which codifies part of the CSRA and establishes the Federal Labor Relations Authority (the Authority). Alternatively, the Union argued Ms. Pham's suit was barred by a six-month statute of limitations described in *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).

In granting the motion to dismiss, the district court did not rule upon the statute of limitations issue. Instead, it interpreted the Act to provide a presumption of federal labor preemption, thus mandating the conclusion that Congress intended the Authority to exercise exclusive jurisdiction over Ms. Pham's grievance.

Key to the court's analysis was the absence of an equivalent to § 301 of the Labor Management Relations Act (LMRA) in the Act.[1] Moreover, the court believed deference to the Authority's power to regulate labor-management relations in the federal sector required entrusting these matters to its expertise.

## II.

While this case presents an issue of first impression in this circuit, we are constrained to indicate we break no new ground in holding there is subject matter jurisdiction in suits of this nature. Our conclusion is hinged not only on an examination of the Act but also on that precedent which must nourish our understanding of a union's duty of fair representation. Finally, we cannot perceive of a just reason, in the absence of clear legislative direction, to barricade the only remaining avenue of relief for the appellant. Although we are reluctant to interfere with the otherwise complex labor-management scheme at is-

sue, we cannot find a justification for preemption under the circumstances present in this case.

The statutory scheme at issue is the CSRA, Pub.L. No. 95–454, 92 Stat. 1111 (1978),[2] which "constitute[s] the most comprehensive reform of the Federal work force since passage of the Pendleton Act in 1883." S.Rep. No. 969, 95th Cong., 2d Sess. 1 (1978), *reprinted in* 1978 U.S. Code Cong. & Ad. News 2723. The CSRA aspired to "promote a more efficient civil service while preserving the merit principle in Federal employment." *Id.* These merit principles represent a continuing concern for a politically neutral, merit-based administration of the Civil Service system.[3] Conjoined with the enunciation of merit principles is the CSRA's enumeration of prohibited personnel practices, a "Bill of Rights" for federal employees.[4] The CSRA was not intended to supplant or alter constitutional rights but to define a procedure under which those rights could be asserted. *Carter v. Kurzejeski,* 706 F.2d 835, 841 (8th Cir.1983).

Title VII of the CSRA, the Act, governs labor-management relations in the federal service. In the statement of purpose of the Act, Congress announced that "experience in both private and public employment" indicates that the statutory protection of the right of employees to organize, bargain collectively, and participate through labor organizations of their own choosing (a) safeguards the public interest; (b) enhances the conduct of public business; and (c) facilitates and encourages amicable settlements of disputes between employees and employers. 5 U.S.C. § 7101(a). To effectuate these goals, Title VII establishes grievance and arbitration procedures for federal employees organized in collective bargaining units.

---

**1.** Section 301 of the LMRA, 29 U.S.C. § 185(a), is the jurisdictional predicate for suits in federal court by an employee against an employer and union.

**2.** The CSRA appears in scattered sections of titles 5, 10, 15, 28, 31, 38, 39 and 42 of the United States Code.

**3.** *See* 5 U.S.C. § 2301(b).

**4.** 5 U.S.C. § 2301(b). *See generally Developments in the Law—Public Employment,* 97 Harv. L.Rev. 1611, 1633–34 (1984).

This comprehensive scheme to manage the relations between the employer, the federal government, and its employees, collectively organized into bargaining units, did not arise in a vacuum. The Legislative History of the Act states, "It is intended that unfair labor practice complaints will be handled by the General Counsel of the Authority in a manner essentially identical to the National Labor Relations Board practices in the private sector." S.Rep. No. 95-969, 95th Cong., 2d Sess. 106, *reprinted in* (1978), U.S. Code Cong. & Ad. News 2828.[5]

Under the Act, an aggrieved employee may choose a negotiated grievance procedure or a statutory procedure in which an adverse personnel action is appealed directly to the MSPB. 5 U.S.C. § 7121(d). Although each procedure is exclusive, an employee may petition the MSPB for review of the personnel action undertaken in the negotiated grievance procedure. 5 U.S.C. § 7121(d). Judicial review of final orders of the Authority is available in the United States courts of appeal. 5 U.S.C. § 7123(a).[6]

Employee-management relations in the public sector, thus, draw their analog from the private sector as governed by the LMRA, 29 U.S.C. §§ 151–169, and the Railway Labor Act, 45 U.S.C. §§ 151–181. Both schemes are premised on the exclusive recognition of a labor organization that has been properly selected by federal employees. 5 U.S.C. § 7111(a). Because the union becomes the sole representative of federal employees in contract negotiation and enforcement of the collective bargaining agreement, the Act requires the union to represent all members of the bargaining unit fairly. This requirement, referred to as a statutory duty of fair representation, embodies a continuing judicial concern with protecting individual interests statutorily subordinated to the union's representation of the bargaining unit.

The Supreme Court first recognized the duty of fair representation in *Steele v. Louisville & Nashville & N.R. Co.*, 323 U.S. 192, 202–03, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944), a case arising under the Railway Labor Act, and later extended the doctrine to unions certified pursuant to the National Labor Relations Act in *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38, 73 S.Ct. 681, 685–86, 97 L.Ed. 1048 (1953). Later, in *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912–13, 17 L.Ed.2d 842 (1967), the Court recognized "the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." Accordingly, the Court concluded, "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190, 87 S.Ct. at 916.[7]

While recognizing that the LMRA reflected important governmental interests by entrusting labor-management relations in an exclusive agency, the *Vaca* court found preemption of a claim for breach of the duty of fair representation was not warranted. The Court reasoned that the primary justification for preemption—the need to avoid conflicting rules of substan-

---

5. The House Report on its version of the bill stated, "The Committee intends that the Authority's role in Federal sector labor-management relations be analogous to that of the National Labor Relations Board in the private sector." H.R.Rep. No. 1403, 95th Cong., 2d Sess. 41, *reprinted in* 1 House Comm. on Post Office & Civil Service, 96th Cong., 1st Sess., Legislative History of Civil Service Reform Act of 1978, at 678 (1979). The Senate version was later adopted.

6. The Act expressly provides for appeals to the circuit courts to enforce the Authority's orders and for appropriate temporary relief or restraining order. 5 U.S.C. § 7123(b). The federal district court has jurisdiction to grant temporary relief, including restraining orders, to enforce an unfair labor practice complaint issued by the Authority. 5 U.S.C. § 7123(d).

7. The Court's use of "statutory" duty may be misleading to one who looks for an explicit duty of fair representation. We believe the word "statutory" in this context refers to the duty which evolves from the right of exclusive representation vested in a union by statute.

tive law in the labor relations area and the desirability of leaving the development of such rules to the agency—were not present in this instance given the "nature of the particular interests being asserted and the effect upon the administration of national labor policies." *Id.* at 180–81, 87 S.Ct. at 912. Unwilling to characterize a breach of the duty of fair representation as an unfair labor practice, the *Vaca* court decided that the National Labor Relations Board did not have exclusive jurisdiction to resolve the claim. "[T]he unique role played by the duty of fair representation doctrine in the scheme of federal labor laws, and its important relationship to the judicial enforcement of collective bargaining agreements in the context presented here, render the *Garmon*-preemption[8] doctrine inapplicable." *Id.* at 188, 87 S.Ct. at 916.

The Act, however, postdates *Vaca*. The district court in the instant action dismissed the implications of *Vaca* not only because the decision predated the Act but also because *Vaca* involved labor-management in the private sector. Given the analysis of the right involved and the scrutiny of the policy issues by the Supreme Court, we believe *Vaca* continues to provide an analytical model for our present inquiry.

Key to the district court's resolution is the absence of a § 301 parallel in the Act and the policy assumption that public interests are vastly different from those in the private sector. We cannot agree with either proposition. Nevertheless, interpretation of the absence of a § 301 from the Act has become the basis for disagreement when the question of jurisdiction is raised. Hence, however meager the decisions in this area, there appears to be a split among the circuits on whether a federal district court can exercise jurisdiction over the breach of a duty of fair representation claim.

In *Warren v. Local 1759, Am. Federation of Gov. Emp.*, 764 F.2d 1395 (11th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985), the Eleventh Circuit concluded that the absence of a

provision in the Act similar to § 301 indicated the clear intention of Congress to confer exclusive jurisdiction in the Authority over a federal employee's duty of fair representation claim. In contrast, the Fourth Circuit, without a written opinion, affirmed the district court's holding in *Naylor v. American Fed. of Govt. Emp. Loc. 446*, 580 F.Supp. 137 (W.D.N.C.1983), *aff'd*, 727 F.2d 1103, *cert. denied*, 469 U.S. 850, 105 S.Ct. 169, 83 L.Ed.2d 105 (1984), that the Act tracks the LMRA to permit *Vaca* jurisdiction over a duty of fair representation suit. Similarly, in *Karahalios v. Defense Language Institute*, 534 F.Supp. 1202 (N.D.Cal.), *reconsideration denied*, 544 F.Supp. 77 (N.D.Cal.1982), the district court held it could exercise subject matter jurisdiction over the plaintiff's duty of fair representation suit.

The Supreme Court has recently cast a new light on this impasse and indicated a resolution of the problem. In *DelCostello*, 462 U.S. at 164, 103 S.Ct. at 2290, deciding which statute of limitations applied in an employee's action against an employer and a union, the court clarified that:

> Such a suit, as a formal matter comprises two causes of action. The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is *implied* under the scheme of the National Labor Relations Act.

(Emphasis added.) Thus, two principles are now clarified. First, for the purpose of subject matter jurisdiction in fair representation suits, we look not to the specific language of the LMRA but to its implication. Second, the duty of fair representation, which is a judicial creation, finds its source in federal law predating *Vaca*.

■■■ Given this concept of duality in an employee's "hybrid" suit, it becomes simple to recognize why Congress did not enact a § 301 parallel in the Act. Since the first facet of the employee's action is against

8. *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

the employer, the parallel would create a waiver of sovereign immunity in the field of federal labor-management relations. While reasons exist for Congress not to insulate a private employer from a damage suit by an aggrieved employee, those same reasons do not apply to the United States. Yet, recalling the distinct analogies between the LMRA and the Act and the principle that fair representation is a judicially created, implied duty, it does not follow that Congress intended to proscribe private actions by federal employees against their unions simply because it did not create a § 301 twin in the Act. The important public interest inherent in the duty of fair representation is too great to draw such a conclusion, and a contrary view negates the statutory history tying the remedial provisions of the Act to the LMRA.

■ The duty of the union which is the focus of this suit is not the same as the union's statutory mandate not to discriminate on the basis of union membership found in 5 U.S.C. § 7114(a)(1). That section does not encompass the same duty that has been described as the duty of fair representation. The duty of fair representation is much broader than a simple prohibition against treating union members differently from other employees in the same bargaining unit.

■ In short, we find a union representing federal employees is under the same constraints of fair representation as one representing private employees, and to the extent private employees have access to federal courts to redress grievances against their unions for breach of fair representation, so, too, have federal employees. *Vaca*, 386 U.S. 171, 87 S.Ct. 903; *Karahalios v. Defense Language Institute*, 534 F.Supp. 1202 (N.D.Cal.); *reconsideration denied*, 544 F.Supp. 77 (N.D. Cal.1982).[9]

Although the district court can exercise jurisdiction, we do not imply the Union's conduct was a breach of the duty of fair representation. This determination must await a presentation on the merits.

REVERSED.

---

**9.** The Union contended at oral argument that the statute of limitations applicable to either the contractual grievance procedure available to Ms. Pham or the statutory procedure before the MSPB was tolled until Ms. Pham had learned of the Union's failure to timely process her papers. They have not furnished us with authority for this contention, and we have found none. The Union's contention that plaintiff could have, upon receiving the notice of the MSPB's final action, filed a complaint with the Authority is not contained in either statute or regulations.