821 F.2d 1389
 125 L.R.R.M. (BNA) 3175
 Efthimios A. KARAHALIOS, Plaintiff-Appellee/Cross-Appellant.
v.
DEFENSE LANGUAGE INSTITUTE/FOREIGN LANGUAGE CENTER PRESIDIO
OF MONTEREY, Defendant.
Local 1263, National Federation of Federal Employees,
Defendant- Appellant/Cross-Appellee.
 Nos. 85-1602, 85-1626, 86-2006.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 16, 1987.
Decided July 13, 1987.
 
 Thomas R. Duffy, and Richard De Stefano, Beverly Hills, Cal., for plaintiff-appellee/cross-appellant.
 Patrick J. Riley, Washington, D.C., for defendant-appellant/cross-appellee.
 Stuart A. Kirsch, College Park, for amicus curae.
 Appeal from the United States District Court for the Northern District of California.
 Before HUG, NELSON and NOONAN, Circuit Judges.
 NOONAN, Circuit Judge:
 
 
 1
 Efthimios A. Karahalios brought suit against the Defense Language Institute/Foreign Language Center Presidio of Monterey (DLI) and Local 1263, National Federation of Federal Employees (the Union). The original incident occurred in 1976. The suit against DLI has been settled. Karahalios and the Union both appeal from the judgment of the district court. The case presents a question of first impression in this circuit as to whether a district court has jurisdiction to entertain an action by a federal employee against his union. Holding jurisdiction does not exist, we reverse.
 
 FACTS AND PROCEEDINGS
 
 2
 In 1976 Karahalios was a Greek language instructor at DLI when a higher position, "Course Developer," was reopened. This position had been held by Simon Kuntelos, who had been demoted to instructor when the position had been closed. Kuntelos believed he was entitled to non-competitive promotion back to his old job and declined to participate in the competitive examination required by DLI. Karahalios took the examination and was made course developer.
 
 
 3
 Kuntelos complained to the Union which, without telling Karahalios, brought a grievance on Kuntelos's behalf. As a result, an arbitrator decided that Kuntelos should be considered. Kuntelos then took the examination, was given substantially more time to complete it than had been afforded Karahalios, and received a grade of 83 as compared to Karahalios' 81. Kuntelos was appointed course developer and Karahalios was demoted. Kuntelos' success was short-lived, however: he was appointed in May 1978, and the position was dropped in October 1979.
 
 
 4
 Karahalios objected to his demotion and filed grievances with DLI which were denied. The Union refused to take his grievances to arbitration on the ground that, since it had represented Kuntelos, it had a conflict of interest. Karahalios then filed unfair labor practice charges with the Federal Labor Relations Authority (FLRA). FLRA's General Counsel ruled that the Union had violated its duty and ordered a complaint issued against the Union. But the Union and the regional director of the FLRA settled, with the Union simply agreeing that in the future it would not inform employees that it could not represent more than one employee seeking the same position. Karahalios derived no benefits from the settlement, which he unsuccessfully appealed to the General Counsel.
 
 
 5
 Karahalios then filed suit in the district court against both DLI and the Union, alleging that DLI had breached the collective bargaining agreement and that the Union had breached its duty of fair representation. In the first of its three published opinions in this case, the district court held that, while it lacked jurisdiction over the claim against DLI, Karahalios' claim against the Union posed a federal question and the FLRA's jurisdiction was not exclusive. Karahalios v. Defense Language Inst., 534 F.Supp. 1202, 1208 (N.D.Cal.1982) (Karahalios I.). The court relied on Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). The court noted that, just as the NLRB was more concerned with broad questions of policy than with individual rights, so was the FLRA. The court declared, "Plaintiff, then, lacks an adequate administrative remedy as did the petitioner in Vaca v. Sipes." Karahalios I, 534 F.Supp. at 1208.
 
 
 6
 Karahalios II held that the court would not assume pendent jurisdiction over Karahalios' claim against DLI for breach of the collective bargaining agreement. Karahalios v. Defense Language Inst., 544 F.Supp. 77, 78 (N.D.Cal.1982). Karahalios III found that the Union had breached its duty of fair representation by (1) deciding to arbitrate on behalf of Kuntelos without consultation with Karahalios, (2) failing to notify Karahalios of the arbitration, and (3) refusing to arbitrate for Karahalios without considering the merits of his claim. Karahalios v. Defense Language Inst., 613 F.Supp. 440, 446-47 (N.D.Cal.1984). The court further held that it could not determine Karahalios' damages because he and Kuntelos "were simply too evenly matched for the court to find that plaintiff had a clear edge." Id. at 449. The court did award Karahalios attorney's fees of $35,000 on the theory that the Union's breach of duty had caused Karahalios to litigate and on the further theory that Karahalios' suit had been of benefit to the Union and all its members. Id. at 449-51.
 
 
 7
 The Union appeals the rulings against it; Karahalios appeals the denial of damages.
 
 ANALYSIS
 
 8
 Several issues are presented by the appeal, but the jurisdictional issue is dispositive. As the issue is one of law, we review de novo. South Delta Water Agency v. Department of Interior, 767 F.2d 531, 535 (9th Cir.1985). On the question of jurisdiction there is a present split of authority. Compare Pham v. American Fed'n of Gov't Employees, Local 916, 799 F.2d 634 (10th Cir.1986) with Warren v. Local 1759 Am. Fed'n of Gov't Employees, 764 F.2d 1395, 1399 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985). Resolution of the conflict depends on interpretation of the Title VII of the Civil Service Reform Act of 1978, (CSRA) 5 U.S.C. Secs. 7101-7135, in the light of Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1976) and other statutes enacted by Congress dealing with the rights of employees and unions.
 
 
 9
 Interpreting the Labor Management Relations Act, the Supreme Court in Vaca held that where a union arbitrarily refused to process a grievance, the injured employee had a right to sue the union in the district court. The Court refused to believe that Congress intended to confer upon unions "unlimited discretion to deprive injured employees of all remedies for breach of contract." 386 U.S. at 186, 87 S.Ct. at 914. The Court bolstered its reasoning by pointing to the possibility of actions in the district court under Sec. 301 and Sec. 303 of the Labor Management Relations Act (29 U.S.C. Secs. 185, 187). Congress, the Court noted, had not meant to give the NLRB exclusive jurisdiction. Id. at 179, 87 S.Ct. at 911.
 
 
 10
 There is no statutory provision analogous to Sec. 301 or Sec. 303 under the CSRA, and as there has been no waiver of immunity by the United States, the government could not be sued by a federal employee. But this difference alone would not justify us in concluding that the basic rationale of Vaca does not speak here. In the absence of other indication of congressional intent, we would hold here, too, that Congress has not intended to confer upon unions unlimited discretion.
 
 
 11
 When Congress enacted the CSRA the federal courts had implied a duty of fair representation not only under the National Labor Relations Act as in Vaca, but also under the Railway Labor Act. Steele v. Louisville & Nashville R.R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). Aware of these decisions and aware of how important Steele, the seminal case, had been in protecting the rights of racial minorities, Congress itself imposed the duty of fair representation on federal unions. But, aware of the decisions, Congress also failed to provide jurisdiction in the federal courts to enforce the duty.
 
 
 12
 Argumentum ex silentio is normally weak, though sometimes helpful. Here the silence of Congress appears to be deliberate. The House version of the Civil Service Reform Act authorized "any party to a collective bargaining agreement," aggrieved by the other party's failure to arbitrate, to file a petition in the appropriate district court for an order that arbitration proceed. H.R.Rep. No. 95-1403, 95th Cong., 2d Sess. 286 (1978). The Senate version of the Act did not contain this jurisdictional grant. The Conference Committee rejected the provision in the House bill, stating, "All questions of this matter will be considered at least in the first instance by the Federal Labor Relations Authority." H.R.Rep. No. 95-1717, 95th Cong., 2d Sess. 157 (1978) reprinted in 1978 U.S.Code Cong. & Admin.News 2723, 2860, 2891. It is true that the provision which the Conference Committee eliminated did not deal with the claim of an employee against his union. But it is also true that the enforcement scheme chosen by Congress showed a strong preference for keeping the interpretation and enforcement of collective bargaining agreements within the process of arbitration, to be reviewed in the first instance by the FLRA. See generally Comment, Federal Sector Arbitration Under the Civil Service Reform Act of 1978, 17 San Diego L.Rev. 857 (1980). Judicial review of a final order of the FLRA is assured by the statute. 5 U.S.C. Sec. 7123.
 
 
 13
 There is more than silence on the part of Congress. In the statute at bar there is an express provision that "a labor organization which has been accorded exclusive recognition ... is responsible for representing the interests of all employees in the unit it represents without discrimination." 5 U.S.C. Sec. 7114(a)(1). The statute goes on to give the FLRA the power to remedy a breach of this duty by awarding back pay against a union that has breached its duty. 5 U.S.C. Sec. 7118(a)(7). There is a fit between the duty and the remedy provided.
 
 
 14
 True, the FLRA has been criticized for not enforcing the duty of fair representation vigorously enough. Broida, Fair Representation for Federal Employees: An Overview, 30 Fed.Bar News & J. 440, 442 (1983). However, the General Counsel received only 270 cases of complaints against labor organizations in fiscal 1985 and only 227 in fiscal 1986, representing respectively 6.6 percent and 4.4 percent of the complaints received by his office. The General Counsel in 1986 dismissed 49 percent of these charges and 25 percent were withdrawn; 13 percent were settled. The General Counsel issued 31 complaints. FLRA, Report on Case Handling Developments of the Office of the General Counsel, FLRA Doc. 1335 (Feb. 1987) pp. 39 and 53. It is of course open to interpretation whether the small number of complaints actually issued reflects lack of zeal or lack of real problems in this area. We have insufficient evidence to conclude that the FLRA does an inadequate job in protecting the rights of the individual worker in relation to a federal union.
 
 
 15
 In the present case, it is evident that the FLRA preferred a settlement with implications for all employees in the future to making Karahalios whole. The facts of this case, on the other hand, indicate that the existence of a district court remedy after investigation and issuance of a complaint by the General Counsel may lead to a tortuous path of litigation whose costs are disproportionate to the individual benefit achieved and whose protracted twists and turnings must be as disheartening to any eventual winner as they are to any eventual loser. In summary, whether the microcosm of this case is studied or whether the general practice of the FLRA is reviewed, no strong reason appears to construe differently what seems to be the congressional intent to channel the grievances of federal employees to the Federal Labor Relations Authority.
 
 
 16
 A paradox: where Congress recognized no duty on a union's part the courts shaped a remedy more potent than the remedy here provided by a statute. The paradox arises because where Congress created the duty it also tempered the remedy. Judicial creativity was thus restrained. We must act within the statutory scheme.
 
 
 17
 The judgment appealed from is Reversed. The case is Dismissed.