**CONTINENTAL MARBLE & GRANITE,**
**Plaintiff-Appellant,**

v.

**CANAL INSURANCE COMPANY,**
**Defendant-Appellee.**

**No. 85–3701**

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

March 28, 1986.

---

Irl R. Silverstein, Gretna, La., for plaintiff-appellant.

Hugh M. Glenn, Jr., and Franklin H. Jones, III, New Orleans, La., for defendant-appellee.

Before GEE, RANDALL and DAVIS, Circuit Judges.

PER CURIAM:

The facts of the case are undisputed. Appellee Canal Insurance Company ("Canal") issued a policy of excess liability insurance to appellant Continental Marble & Granite Company, Inc. ("Continental Marble"). The Northwest Insurance Company was Continental Marble's primary insurer. During the lives of the policies, four lawsuits alleging personal injury and property damage were brought against Continental Marble in Texas state court. Unfortunately for Continental Marble, Northwest Insurance Company became insolvent in 1984. Continental Marble therefore brought this action in Louisiana state court, seeking a declaratory judgment that Canal must defend and indemnify it for any liability resulting from the Texas suits. After Canal removed the action, a federal district court entered summary judgment in Canal's favor. Continental Marble now appeals this judgment.

The dispute centers on the following awkward provision of Canal's policy to Continental Marble:

> The company shall be liable only for ultimate net loss resulting from any one occurrence in excess of ... if the insurance afforded by such underlying insurance is inapplicable to the occurrence, the amount stated in the declarations as the retained limit.

Continental Marble asserts that Northwest Insurance's insolvency renders its coverage "inapplicable," i.e., unable to be applied. This being so, Continental Marble argues, the excess liability policy "drops down" to become the primary policy. *Gros v. Houston Fire & Casualty Insurance Co.*, 195 So.2d 674 (La.App.1967), is cited as support for this contention, but Continental Marble's reliance on *Gros* is misplaced. While the court there held that the excess policy insurer must indemnify the insured in the place of the insolvent primary insurer, its ruling results from interpreting a policy provision absent here. Specifically, the appellee extended coverage for liability exceeding that covered by "other valid and collectable insurance." 195 So.2d at 676. Because the policy involved here contains no such phrase, *Gros* is unpersuasive.

We therefore look to the possible consequences of the rule Continental Marble propounds. Imposing the duty of indemnification on Canal would, in effect, transmogrify the policy into one guaranteeing the solvency of whatever primary insurer the insured might choose. *See Golden Isles Hospitals, Inc. v. Continental Casualty Co.*, 327 So.2d 789, 790 (Fla.App.1976). An excess liability insurer obviously does not anticipate this heavy onus:

> Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy.

*Whitehead v. Fleet Towing Co.*, 110 Ill. App.3d 759, 66 Ill.Dec. 449, 442 N.E.2d 1362, 1366 (1982). Continental Marble's proposed rule would require insurance companies to scrutinize one another's financial wellbeing before issuing secondary policies. The insurance world is complex enough; to impose this additional burden on companies such as Canal would only further our legal system's lamentable trend of complicating commercial relationships and transactions. The district court's judgment is therefore

AFFIRMED.