885 F.2d 276
 William HARVILLE, Joined by his wife, Janice Harville, and
Precision Pump and Compressor of Odessa, Inc.,
Plaintiffs-Appellants,
v.
TWIN CITY FIRE INSURANCE COMPANY, A Member of the Hartford
Insurance Group, Hartford Insurance Company of the
Midwest, Defendants-Appellees.
 No. 89-1245
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Oct. 10, 1989.
 Allen Moore and Eva-Marie Leahey, Moore & Associates, Odessa, Tex., for plaintiffs-appellants.
 Mark M. Danheiser and John H. Marks, Jr., Strasburger & Price, Dallas, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Western District of Texas.
 Before GEE, WILLIAMS and DUHE, Circuit Judges.
 JERRE S. WILLIAMS, Circuit Judge:
 
 
 1
 Appellants William Harville, his wife Janice Harville, and Precision Pump and Compressor of Odessa, Inc. seek review of a judgment entered by the United States District Court granting appellee Twin City Fire Insurance Company's motion for summary judgment.
 
 
 2
 Appellants' current action is the second of two lawsuits arising out of a September 1, 1982, pump explosion. In the first action, Mr. Harville filed a products liability suit against Precision Pump and Compressor of Odessa, Inc., the company that manufactured the pump. Precision was covered by two insurance policies. A primary liability policy issued by United General Insurance Company provided coverage up to $300,000. In addition, Twin City had issued an excess liability policy which covered Precision from $300,000.01 to $5,000,000. Upon notification of the first lawsuit, United General engaged counsel to defend Precision Pump. On October 21, 1986, however, United General was declared insolvent and placed in receivership. Consequently, the attorney hired by United General withdrew from the action. Precision Pump itself then hired a second attorney to continue the defense against Mr. Harville's claims.
 
 
 3
 The second attorney gave notice directly to Twin City on February 27, 1987, demanding that Twin City assume the defense of the Harville suit and that Twin City indemnify Precision on the Harville injury. Twin City did not provide a defense for Precision.
 
 
 4
 On November 25, 1987, the Harvilles and Precision entered into a "Settlement Agreement with Assignment of Rights and Release." In this instrument, Precision agreed to the entry of an $800,000 judgment against it and to the assignment of its claims against Twin City to Harville. In return, Harville issued a covenant not to execute the judgment against Precision's assets and released Precision "from all claims, demands, damages, actions or causes of action" which arose from the pump explosion. On December 8, 1987, an agreed judgment in accordance with this settlement was entered against Precision in the original lawsuit. It is undisputed that there was no actual trial, no oral hearing, no evidence, no findings by the court, and no determination by the court of liability or damages. Twin City was not a party to and did not participate in the settlement negotiations or the settlement.
 
 
 5
 In this, the second lawsuit arising out of the pump explosion, appellants have sued Twin City to recover on the excess liability policy and to assert a separate cause of action for breach of the duty of good faith and fair dealing by Twin City. The district court granted summary judgment for Twin City on the ground that the settlement agreement extinguished Precision's liability because, under the terms of the insurance contract, Twin City was never obligated to pay. Appellants' appeal is timely.I.
 
 
 6
 The excess liability policy issued by Twin City provided "[t]he Company will defend any claim or suit against the insured seeking damages on account of injury or damage to which this policy applies and which no underlying insurer is obligated to defend...." Appellants contend that since United General was placed in receivership, "there was no longer an underlying insurer obligated to defend Precision...." Appellants assert, therefore, that Twin City's duty to defend was invoked. Twin City counters that United General, while financially unable to provide a defense for Precision, was nonetheless still legally "obligated" to provide such a defense. It is undisputed that if United General was solvent, United General would be obligated to provide a defense.
 
 
 7
 While Texas law applies in this case, the interpretation of the insurance contract is a legal question and appellant does not assert any unusual principles of Texas law which must be applied in the process of interpretation. Neither party has produced any authority directly addressing the issue whether an insurance company placed in receivership by the state is still legally obligated to defend its insureds. But when we address generally the effect of primary insurer insolvency on excess liability insurers, we find two virtually controlling cases which establish that United General's obligation continues into receivership, at least insofar as the excess liability insurer's contractual duty to defend is concerned.
 
 
 8
 In Mission Nat'l. Ins. Co. v. Duke Transp. Co. Inc., 792 F.2d 550 (5th Cir.1986), the primary insurer was insolvent. The insured claimed that the excess liability carrier was required to "drop down" to assume the primary insurer's obligations, including primary coverage and defense. Construing the specific language of that contract[1] we held that the excess carrier was not obligated to cover the primary loss or to provide a defense. Mission, 792 F.2d 550 at 552-53.
 
 
 9
 We encountered a similar situation in Continental Marble & Granite v. Canal Ins. Co., 785 F.2d 1258 (5th Cir.1986). In Continental, the primary insurer was insolvent and the insured contended that the excess liability insurer must "drop down" to defend and insure in place of the primary carrier. Again, construing the language of the excess liability policy,[2] we held that the excess carrier was not required to do so.
 
 
 10
 While Mission and Continental are not directly controlling, the contract interpretation upon which they are based is of controlling guidance. Excess liability insurers contract to provide inexpensive insurance with high policy limits by requiring the insured to contract for primary insurance with another carrier.[3] The premium is also held down by the fact that the duty to defend rests primarily on the primary insurer, falling on the excess liability carrier only when the primary carrier is not required to defend because the loss is not covered by the primary policy.[4] If excess liability carriers are required to defend in cases where the primary carrier would have defended except for insolvency, then the risk of the primary carrier's insolvency is placed on the excess carrier. Such a "rule would require insurance companies to scrutinize one another's financial well-being before issuing secondary policies. The insurance world is complex enough; to impose this additional burden on companies such as [the excess carrier] would only further our legal system's lamentable trend of complicating commercial relationships and transactions." Continental, 785 F.2d 1258 at 1259.
 
 
 11
 To hold that United General's "obligation" to defend was extinguished upon United General's insolvency would re-write the excess liability policy to place a risk on Twin City which Twin City never agreed to assume. Specifically, we would be making Twin City an insurer not only of Precision's excess liability, but of United General's financial ability to defend as well. We hold, therefore, that insolvency did not end United General's "obligation" to defend Precision. Hence, under the terms of the contract, Twin City had no duty to defend Precision.
 
 II.
 
 12
 Twin City asserts that Precision's settlement violated the policy's "no action" clause. This "no action" clause provides:
 
 
 13
 No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.
 
 
 14
 Under Texas law, the "no action" clause is a valid condition precedent to liability under the policy. Great American Ins. Co. v. Murray, 437 S.W.2d 264, 265 (Tex.1969); St. Paul Ins. Co. v. Rahn, 641 S.W.2d 276, 278 (Tex.App.--Corpus Christi 1982, no writ); Munster Steel Co. Inc. v. The Travelers Indem. Co., 620 S.W.2d 771, 772 (Tex.Civ.App.--Dallas 1981, no writ).
 
 
 15
 It is undisputed that the judgment against Precision was an agreed judgment and was not rendered after actual trial. It is also undisputed that Twin City was not a party to the settlement negotiations and did not give its written agreement to the pact. It is clear, therefore, that Precision failed to comply with the "no action" clause.
 
 
 16
 Appellants attempt to excuse their non-compliance with the "no action" clause by relying upon First Nat'l Indem. Co. v. Mercado, 511 S.W.2d 354 (Tex.Civ.App.--Austin 1974, no writ). The court in Mercado wrote:
 
 
 17
 The rule is well established that although an insurance company ordinarily may insist upon compliance with the condition found in the "no action" clause, the company "... may not do so after it is given the opportunity to defend the suit or to agree to the settlement and refuses to do either on the erroneous ground that it has no responsibility under the policy."
 
 
 18
 Mercado, 511 S.W.2d 354 at 358 (emphasis added). Twin City did not have a duty to defend Precision. Twin City's refusal to defend, therefore, was not "erroneous," and appellant's reliance on Mercado is mis-placed.
 
 
 19
 Precision did not comply with the condition precedent "no action" clause. There can be no liability upon Twin City under the policy on this ground.
 
 III.
 
 20
 Appellants also contend that the "district court erred by holding there could be no tort action for breach of the duty to defend or good faith and fair dealing." In light of our holding that Twin City had no duty to defend, we find that no cause of action for breach of the duty to defend[5] could lie.
 
 IV.
 
 21
 Finally, appellants assert that the district court erred in granting summary judgment on the ground that the settlement left Precision with no obligation to pay the judgment, thereby effectively leaving Twin City with no obligation to pay the policy proceeds. In view of the Harville's agreement not to enforce the judgment against Precision, Twin City's lack of duty to defend, and appellants' non-compliance with the condition precedent "no action" clause, we need not decide this issue.
 
 
 22
 "The appellate court does not have to affirm a decision on a rule 56 motion for the same reasons that persuaded the court below to grant the motion. On the contrary, it can find another ground for concluding that the movant is entitled to judgment as a matter of law...."
 
 
 23
 10 C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure Sec. 2716 (1983). See also Delhomme Indus., Inc. v. Houston Beechcraft, Inc., 735 F.2d 177, 185 (5th Cir.1984); Stegmaier v. Trammell, 597 F.2d 1027, 1038 (5th Cir.1979); and Davis v. Liberty Mut. Ins. Co., 525 F.2d 1204, 1205 (5th Cir.1976).
 
 
 24
 Summary judgment in favor of Twin City was proper in this case. There are no substantial factual issues and the legal issues are properly resolved in favor of appellee.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 In Mission, the contract provided:
 As respects occurrences covered under this policy, but not covered under the underlying insurances as set out in the attached schedule or under any other collectible insurance, the Company shall
 (a) defend in his name and behalf any suit against the Insured alleging liability insured under the provisions of this policy and seeking damages on account thereof....
 Mission, 792 F.2d 550 at 551.
 The Court held that "covered," as used in the policy meant only that some primary insurance applied, not that it applied and was collectible. Mission, 792 F.2d 550 at 553.
 
 
 [2]
 The portion of the contract cited by the Court in Continental did not include the provision covering the duty to defend. The portion cited, which covered the insurer's obligation to pay, turned on construction of the word "inapplicable." In construing "inapplicable," the Court held that the primary insurance was not "inapplicable," even though the primary carrier was insolvent and therefore unable to pay. As a result, the excess carrier was not liable. While this does not bear directly on the duty to defend, it is illustrative of the effect of insolvency on the primary carrier. Here, even though the proceeds of the primary policy were uncollectible, the primary insurance was not "inapplicable." Continental, 785 F.2d 1258
 
 
 [3]
 See Continental, 785 F.2d 1258 at 1259 (quoting Whitehead v. Fleet Towing Co., 110 Ill.App.3d 759, 66 Ill.Dec. 449, 453, 442 N.E.2d 1362, 1366 (1982))
 "Excess or secondary coverage is coverage whereby, under the terms of the policy, liability attaches only after a predetermined amount of primary coverage has been exhausted. A second insurer thus greatly reduces his risk of loss. This reduced risk is reflected in the cost of the policy."
 
 
 [4]
 7C J. Appleman, Insurance Law & Practice, Sec. 4682 at 28 (1979)
 
 
 [5]
 In their brief, appellants refer also to the duty of good faith and fair dealing. The only Twin City action claimed as a breach of this duty, however, is Twin City's refusal to defend. Thus, our holding that Twin City was under no duty to defend precludes a cause of action for breach of the duty of good faith and fair dealing as well