79 N.Y.2d 871 (1992)
Ambassador Associates et al., Appellants,
v.
James P. Corcoran, as Superintendent of the New York State Insurance Department, et al., Respondents.
Court of Appeals of the State of New York.
Argued January 8, 1992.
Decided February 13, 1992.
Alan M. Gelb, Richard S. Fischbein, Kenneth G. Schwarz, Deborah J. Locitzer and Steven M. Raphael for appellants.
Sheila L. Birnbaum, Irene A. Sullivan, Timothy G. Reynolds, Lloyd M. Eisenberg and Toni C. Hamburg for Home Insurance Company, respondent.
James P. Corcoran, as Superintendent of Insurance, respondent precluded.
Concur: Chief Judge WACHTLER and Judges SIMONS, HANCOCK, JR., and BELLACOSA. Judge TITONE dissents and votes to reverse in an opinion in which KAYE and ALEXANDER concur.
Order affirmed, with costs, for the reasons stated in the opinion by Justice David B. Saxe at Supreme Court, New York County (143 Misc 2d 706), and the reasons stated in the memorandum of the Appellate Division (168 AD2d 281).
*874 TITONE, J. (dissenting).
The Court concludes that defendant Home Insurance Company (Home)  which agreed to provide a second layer of excess insurance coverage to plaintiffs  is not required to "drop down" and close the gap in coverage created by the insolvency of an underlying insurer. Inasmuch as the majority's holding, in our view, serves only to encourage excess insurers to draft policies which fail to inform policyholders in clear and unequivocal language that they  and not the excess insurer  bear the risk of an underlying carrier going insolvent, we respectfully dissent.
Plaintiffs, the owners of a Queens apartment complex, purchased three layers of liability insurance coverage. The primary carrier provided $1 million in coverage. Mission Insurance Company  now insolvent  provided $10 million in excess of that, and Home agreed to provide a final layer of $15 million.
In 1985, a fire broke out and three tenants commenced a personal injury action seeking damages of $24 million. Although the Mission policy was in force on the day of the fire, that company's subsequent insolvency led to a dispute between Ambassador and Home as to whether Home had to drop down to fill the gap in coverage. Supreme Court held that Home's policy was unambiguous and did not require it to drop down (143 Misc 2d 706), and the Appellate Division agreed (168 AD2d 281). We, however, conclude that the critical language in the policy did not clearly inform plaintiffs that they bore the risk of an underlying insurer's insolvency.
At the heart of this case are two provisions in the policy. The first (the "insuring" clause) provides in relevant part:
"[Home] hereby agrees to pay on behalf of the Insured the Ultimate Net Loss in excess of the Underlying Insurance as shown in Item 4 of the Declarations".[*]
The second (the "maintenance" clause) provides: *875
"The limits of the Underlying Insurance shall be maintained in full effect during the currency of this policy except for reduction of such limits by exhaustion of aggregate limits (if any) contained therein by paying or by having been held liable to pay for damages for accident(s) or occurrence(s), whichever is applicable, during Each Annual Period of this policy. Failure of the Insured to comply with the foregoing shall not invalidate this policy but in the event of such failure, the company shall be liable only to the extent that it would have been held liable had the Insured complied therewith."
Careful examination of the function and interrelationship of these clauses reveals that plaintiffs' policy is simply ambiguous on the point of drop down coverage. Therefore, under our rule that "if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company" (Hartol Prods. Corp. v Prudential Ins. Co., 290 N.Y. 44, 49), we would grant summary judgment in favor of plaintiffs.
There are essentially two general types of excess insurance policies. Policies falling within the first category typically provide that the insurer is under a duty to pay net loss in excess of the "valid and collectible" underlying insurance. With respect to such policies, the insurer is clearly under an obligation to drop down and fill the void in coverage created by the insolvency of an underlying carrier (see, Gladstone v Ritter Co., 133 Misc 2d 922). Excess insurance policies falling within the second category, in contrast, usually provide that the insurer is obligated to pay net loss in excess of the "limits" or the "amount" of the underlying insurance. As to such policies, the "limit" or "amount" sets a fixed dollar point at which the excess insurer's liability attaches (see, St. Vincent's Hosp. & Med. Center v Insurance Co., 117 Misc 2d 665; Molina v United States Fire Ins. Co., 574 F.2d 1176).
Here, of course, neither form of operative language is present  the policy merely provides that Home will pay net loss "in excess of the Underlying Insurance." From this clause alone it is impossible to tell whether Home must pay in excess of what is available from the underlying insurance, or in excess of the limits of the underlying insurance, regardless of *876 availability. This ambiguity alone justifies summary judgment in the insured's favor (see, United States Fid. & Guar. Co. v Annunziata, 67 N.Y.2d 229, 232; Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 N.Y.2d 390, 398; Breed v Insurance Co., 46 N.Y.2d 351, 353; Miller v Continental Ins. Co., 40 N.Y.2d 675, 678).
Moreover, despite Home's assertions to the contrary, it is plain to us that it was the policy's maintenance clause  not its insuring clause  which was intended to protect Home against having to drop down under ordinary circumstances. The maintenance clause required the insured to maintain the "limits" of the underlying insurance policy in effect. If the insured complied, Home would  as a general rule  have a $10 million cushion of "underlying Insurance" to "pay in excess of." And if the insured did not, Home would be liable only to the extent that it would have been had the insured complied. Here, plaintiffs did meet their obligations by keeping the Mission policy in full force through the date of the loss (see, Donald B. MacNeal, Inc. v Interstate Fire & Cas. Co., 132 Ill App 3d 564, 477 NE2d 1322). Having done so, they should not be denied the benefit of their bargain.
Order affirmed, etc.
NOTES
[*] Item 4 of the Declarations provides:

 "Schedule of Underlying Insurance
 "First Underlying Insurance Policy:
 "Carrier, Policy No. and Term: Applicable Limit:
 "Mission Insurance Co. $10,000,000. Each Occurrence
 "To be advised
 "10/23/84-85 $10,000,000. Annual Aggregate".