961 F.2d 32
 22 Fed.R.Serv.3d 570, 22 Envtl. L. Rep. 20,811
 ASSOCIATED INDEMNITY CORPORATION, Plaintiff,
v.
FAIRCHILD INDUSTRIES, INC., Defendant-Appellant,
First State Insurance Company; Allstate Insurance Company,
(as successor to Northbrook Excess and Surplus
Insurance Company), Defendants,
Highlands Insurance Company, Defendant-Appellee.
 No. 916, Docket 91-9137.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 30, 1992.
Decided April 3, 1992.
 
 Robert M. Rader, Washington, D.C. (Richard C. Browne, Tracy M. Getz, Winston & Strawn, Washington, D.C., James I. Serota, Michael Guararra, Huber, Lawrence & Abell, New York City, of counsel), for defendant-appellant.
 Marian S. Hertz, New York City (Sheft & Sheft, of counsel), for defendant-appellee.
 Before: VAN GRAAFEILAND, WALKER and McLAUGHLIN, Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Fairchild Industries brought a declaratory judgment action in the United States District Court for the Southern District of New York (Michael B. Mukasey, Judge ) to determine whether it was covered under several insurance policies for certain environmental liabilities. An excess insurer, Highlands Insurance Company, asked Fairchild to consent to a voluntary dismissal of Highlands from the action, without prejudice, because its coverage could not conceivably be triggered by Fairchild's environmental liabilities. When Fairchild refused, Highlands moved to dismiss. Additionally, Highlands requested the imposition of sanctions under Fed.R.Civ.P. 11 based on its view that Fairchild's refusal to consent to Highlands' dismissal was unreasonable. The parties then settled before the district court could rule on Highlands' motion to dismiss. Highlands' Rule 11 motion, however, was pursued and the district court awarded Highlands $42,000. Fairchild now appeals, arguing that the district court's imposition of sanctions was an abuse of discretion. We agree and therefore reverse.
 
 BACKGROUND
 
 2
 We assume familiarity with the facts set forth in the district court's opinion, Associated Indem. Corp. v. Fairchild Indus., 138 F.R.D. 384 (S.D.N.Y.1991), and summarize only those necessary to our disposition of this appeal.
 
 
 3
 Fairchild owned a Maryland factory that generated hazardous waste. In the early 1980's, Fairchild contracted with Diggs Sanitation, Inc., then a licensed hazardous waste hauler, to cart Fairchild's hazardous waste to a licensed facility in Pennsylvania, and to dispose of it there. Diggs, however, dumped the waste on its own Maryland property as well as on adjacent land owned by the Cumberland Cement & Supply Company, an innocent third party. The Environmental Protection Agency ("EPA"), which intervened in 1982, now refers to these polluted properties collectively as the Limestone Road Site.
 
 
 4
 By the time EPA became involved, the environmental damage was already done, and the basic problem at the Limestone Road Site is how it will be cleaned up, how much it will cost and who will pay for it. As is the unhappy custom in these cases, a firestorm of litigation, but precious little clean-up--"site remediation" in the fashionable argot of the environmental Bar--followed. Cumberland Cement fired the first salvo in 1984, suing both Fairchild and Diggs in Maryland state court for seven million dollars.
 
 
 5
 In 1986, the EPA completed a standard Remedial Investigation/Feasibility Study (the "Study") of the Limestone Road Site, and it notified Fairchild that it considered the company a "potentially responsible party" under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq. (1988). Thus, the EPA considered Fairchild to be jointly and severally liable for clean-up of the Limestone Road Site. See id. § 9607. The Study concluded "that a threat of direct contact to the public health and environment exists from the chemicals at the Limestone Road Site."
 
 
 6
 The Study also examined five alternatives for remedying contamination of the site. The most comprehensive remedial plan proposed by the EPA called for extensive soil excavation and thorough site remediation at a total estimated cost of $15,385,300. This estimate was said by EPA to be accurate within +50% to -30%. After the Study, the parties could not agree on an appropriate remedial plan. EPA then sued Fairchild and Cumberland Cement in Maryland federal court under CERCLA. Ultimately, EPA, Fairchild and Cumberland Cement entered a partial consent decree obligating Fairchild and Cumberland Cement to finance both interim remedial measures and a supplementary study of the contaminated property.
 
 
 7
 Confronted with millions of dollars in potential liability, Fairchild now looked to its insurers. It carried policies with a primary insurer, Associated Indemnity Corp., and several excess insurers, including Highlands. Excess insurers become liable to reimburse an insured only after insurable liabilities exceed certain contractually agreed amounts. Fairchild had four "layers" of excess coverage, each kicking in at successively higher levels, as Fairchild's liabilities grew. For example, Allstate Insurance Company insured Fairchild for losses between $15 and $25 million. Highlands' coverage was not triggered until Fairchild's insurable liabilities exceeded $25 million.
 
 
 8
 In December 1988, Fairchild sued all its insurers in the Northern District of California for a declaratory judgment determining its insurance coverage for all its liabilities arising out of the Limestone Road Site. Fairchild's primary insurer countered by bringing an identical declaratory judgment action in the Southern District of New York and both actions were eventually consolidated before Judge Mukasey.
 
 
 9
 As already noted, Highlands requested that Fairchild consent to its dismissal from the action without prejudice pursuant to Fed.R.Civ.P. 41(a)(1)(ii). When Fairchild refused, Highlands moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and (6), and for sanctions against Fairchild for having refused to consent to the dismissal. Highlands' position was simple: under no circumstances could Fairchild's liability for the Limestone Road Site exceed $25 million, the amount necessary to trigger Highlands' coverage. Thus, Highlands contended, there was no actual controversy between it and Fairchild and Fairchild's refusal to accept this reality was sanctionable.
 
 
 10
 The parties settled Highlands' motion to dismiss but not its sanctions motion. Judge Mukasey then granted the sanctions motion and awarded Highlands' $42,000 for costs incurred after Fairchild filed its papers in opposition to Highlands' motion to dismiss.
 
 DISCUSSION
 
 11
 Rule 11 "is targeted at situations 'where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands.' " Stern v. Leucadia Nat'l Corp., 844 F.2d 997, 1005 (2d Cir.) (quoting Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir.1985), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987)), cert. denied, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988). When divining "the point at which an argument turns from merely 'losing' to losing and sanctionable", Motown Prods., Inc. v. Cacomm, Inc., 849 F.2d 781, 785 (2d Cir.1988) (emphasis in original), we have instructed district courts to " 'resolve all doubts in favor of the signer.' " Id. (quoting Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir.1986), cert. denied, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)); accord Stern, 844 F.2d at 1005; Eastway Constr., 762 F.2d at 254. In turn, when reviewing a district court's imposition of a Rule 11 sanction, the Supreme Court has instructed us to employ an "abuse of discretion" standard. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 S.Ct. 2447, 2458, 110 L.Ed.2d 359 (1990). If the sanction under review is grounded in a determination of fact, a court of appeals may conclude that the district court abused its discretion only when that factual finding is clearly erroneous. See id. We conclude that the district court's finding that Fairchild could not reasonably have believed that it faced $25 million in environmental liability was clearly erroneous.
 
 
 12
 Like any other action brought in federal court, a declaratory judgment is available to resolve a " 'real question of conflicting legal interests.' " Berni v. International Gourmet Restaurants of Am., Inc., 838 F.2d 642, 649 (2d Cir.1988) (quoting Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp., 257 F.2d 485, 489 (3d Cir.1958)); see also 28 U.S.C. § 2201(a) (1988) (Declaratory Judgment Act empowers a federal court, "[i]n a case of actual controversy within its jurisdiction, ... [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought") (emphasis added). That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. See American Mach. & Metals, Inc. v. De Bothezat Impeller Co., 166 F.2d 535, 536 (2d Cir.1948); National R.R. Passenger Corp. v. Consolidated Rail Corp., 670 F.Supp. 424, 430-31 (D.D.C.1987); Lumbermens Mut. Casualty Co. v. Borden Co., 241 F.Supp. 683, 701 (S.D.N.Y.1965). Rather, courts should focus on "the practical likelihood that the contingencies will occur...." 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2757, at 587 (2d ed. 1983) [hereinafter Wright & Miller], quoted in Browning-Ferris Indus. of Ala., Inc. v. Alabama Dep't of Envtl. Mgmt., 799 F.2d 1473, 1478 (11th Cir.1986). Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite "future contingencies that will determine whether a controversy ever actually becomes real." 10A Wright & Miller, supra, at 586; see, e.g., Keene Corp. v. Insurance Co. of N. Am., 667 F.2d 1034, 1039-40 (D.C.Cir.1981), cert. denied, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982); ACandS, Inc. v. Aetna Casualty & Surety Co., 666 F.2d 819, 822-23 (3d Cir.1981); see also G. Vario, Rule 11 Sanctions 462 (1991) ("[w]hen the law or facts are unclear as to whom [sic] may be joined, courts will decline to impose sanctions").
 
 
 13
 The contingency in this case is whether Fairchild's liabilities for the Limestone Road Site will exceed $25 million. It is undisputed that no one knows for certain what the final tab will be for the Limestone Road Site. The district court's imposition of sanctions, however, was predicated on its judgment that Fairchild could not have reasonably believed that its liabilities for the Limestone Road Site would approach $25 million. This conclusion is belied by the district court's own findings.
 
 
 14
 The district court explicitly credited Fairchild's contention that it "reasonably could have anticipated future demands [for site remediation] by the EPA ... [up to] the $15 million required by the most comprehensive remedial alternative considered by the EPA." 138 F.R.D. at 389. Although the district court was well aware that the EPA expected this estimate to be accurate only within +50% to -30%, id. at 387 n. 3, it inexplicably ignored this significant range of potential error. Therefore, according to the EPA cost estimates the district court accepted, future remediation of the Limestone Road Site could exceed $22 million. Moreover, EPA's cost estimates do not account for inflation which undoubtedly has increased the cost of site remediation since 1986. See, e.g., Simpson Elec. Co. v. NLRB, 654 F.2d 15, 16 (7th Cir.1981) (taking judicial notice of inflation); Ramsay v. Cooper, 553 F.2d 237, 240 (1st Cir.1977) (same). The district court also agreed that "Fairchild anticipated liability of $1.7 to $2.5 million for [EPA's] interim remedial measures." 138 F.R.D. at 389. Finally, Fairchild had been sued by Cumberland Cement for damages of $7 million. In sum, based on the district court's own factual findings, Fairchild could reasonably have argued that its liabilities for the Limestone Road Site might exceed $25 million, thereby triggering Highlands' coverage.[1] Rule 11 requires no more. Fairchild's argument may have been a loser, but it was not a sanctionable loser. See Securities Indus. Ass'n v. Clarke, 898 F.2d 318, 321 (2d Cir.1990). Thus, the district court's finding to the contrary is clearly erroneous.
 
 
 15
 Finally, it has not escaped our notice that, in its answer to Associated Indemnity's complaint seeking a declaratory judgment, Highlands has set forth 36 separate affirmative defenses, all interposed in an action to declare whether and to what extent Fairchild is insured. Some of these defenses are more ingenious than ingenuous and compel us to caution that defendants who live in glass pleadings ought not to throw Rule 11 stones.[2]
 
 CONCLUSION
 
 16
 Accordingly, we reverse the order of the district court awarding Highlands Rule 11 sanctions.
 
 
 
 [1]
 This conclusion obviates the need for us to pass on Fairchild's alternative argument that Highlands' coverage could have been triggered at $15 million under a so-called "drop-down" theory. See 138 F.R.D. at 388 (coverage of an excess insurer may drop down one level if underlying coverage becomes uncollectible). The viability of the doctrine under New York law was an open issue until a sharply divided New York Court of Appeals rejected it after the argument in this case. See Ambassador Assocs. v. Corcoran, 79 N.Y.2d 871, 581 N.Y.S.2d 276, 589 N.E.2d 1258 (1992) (4-3 decision), aff'g mem. 168 A.D.2d 281, 562 N.Y.S.2d 507 (1st Dept.1990), aff'g 143 Misc.2d 706, 541 N.Y.S.2d 715 (Sup.Ct.N.Y.Cty.1989); see also Highlands Ins. Co. v. Gerber Prods. Co., 702 F.Supp. 109, 112 (D.Md.1988) (noting, in dictum, that drop down doctrine may be available under Maryland law in certain circumstances)
 
 
 [2]
 In the same vein, Highlands seemingly wanted dismissal from the action and a chance to relitigate issues decided in its absence: pressed by Judge Van Graafeiland at oral argument, Highlands' counsel conceded that it would not agree to be bound by any determinations the district court made in its absence, notwithstanding that Judge Smith of the Northern District of California had already warned the parties to avoid piecemeal litigation