**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CANAL INSURANCE COMPANY,

    Plaintiff Counter Defendant - Appellee,

v.

MONTELLO, INC.,

    Defendant Third-Party Plaintiff Counterclaimant - Appellant,

v.

CONTINENTAL CASUALTY COMPANY; HOUSTON GENERAL INSURANCE COMPANY; SCOTTSDALE INSURANCE COMPANY,

    Third-Party Defendants - Appellees,

and

HARTFORD FINANCIAL SERVICES GROUP, INC.; TWIN CITY FIRE INSURANCE COMPANY; NATIONAL INDEMNITY COMPANY,

    Third-Party Defendants.

No. 14-5039
(D.C. No. 4:10-CV-00411-JHP-TLW)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, and **PHILLIPS**, Circuit Judges.

In this appeal arising out of a declaratory judgment action, Defendant/Third-Party Plaintiff/Appellant Montello, Inc. appeals from a final judgment in favor of various insurers including Plaintiff-Appellee Canal Insurance Co., Third-Party Defendants/Appellees Continental Casualty Co., Houston General Insurance Co., and Scottsdale Insurance Co. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

## Background

Montello Inc. ("Montello"), an Oklahoma corporation, is a distributor of products used in the oil-drilling industry. One of the products distributed was a drilling mud viscofier containing asbestos. The product was distributed between 1966 and 1985. Thereafter, Montello was sued by individuals claiming injuries as a result of exposure to asbestos.

Montello purchased primary insurance coverage from The Home Insurance

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Company ("Home") from March 1975 to March 1984. In 2003, Home was declared insolvent by a New Hampshire court. At the time of the insolvency, Home had not paid out any claims for bodily injury on Montello's behalf.

After Home's insolvency, excess insurer and Plaintiff/Appellee Canal Insurance Company ("Canal") filed a declaratory judgment action against Defendant/Third-Party Plaintiff/Appellant Montello alleging it had no present duty to defend or indemnify Montello in third-party personal injury actions arising from Montello's distribution of asbestos products. Montello responded by filing counterclaims against Canal, seeking a declaratory judgment and claiming a breach of contract. Montello also filed third-party complaints against Continental Casualty Company ("Continental") and Houston General Insurance Company ("Houston General"). The claim against Continental asserted Continental had issued an insurance policy to Montello, the terms of which Montello would prove through secondary evidence as neither Montello nor Continental had copies of the policy. The claim against Houston General contained substantially the same allegations as the claim against Canal. Canal, Houston General, and Continental all moved for summary judgment.

The district court divided the case into phases and through a series of rulings, rejected Montello's various claims. On appeal, Montello challenges the district court's holdings that (1) Canal and Houston General have no obligation to drop down and defend or indemnify Montello, Canal Ins. Co. v. Montello, Inc.,

-3-

No. 10-cv-411-JHP-TLW, 2013 WL 6732658 (N.D. Okla. Dec 19, 2013) (also available at XIII Aplt. App. 3506–45); (2) Montello failed to offer sufficient evidence to establish the terms of lost Continental insurance policies, Canal Ins. Co. v. Montello, Inc., No. 10-cv-411-JHP-TLW, 2012 WL 4891699 (N.D. Okla. Oct. 15, 2012) (also available at IX Aplt. App. 2443–74); and (3) the case presented no justiciable case or controversy which resulted in the case's dismissal, Canal Ins. Co. v. Montello, Inc., No. 10-cv-411-JHP-TLW (N.D. Okla. March 12, 2014) (also available at XIII Aplt. App. 3644–46).

Discussion

When the relevant facts are undisputed, we review the district court's interpretation of an insurance contract de novo. Hous. Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997). Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact" when viewing the record and drawing all reasonable inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(a); See Merrifield v. Bd. of Cty. Comm'rs, 654 F.3d 1073, 1077 (10th Cir. 2011).

In a diversity action, we must apply the substantive law of the forum state. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). The parties do not dispute that Oklahoma law applies. The Oklahoma Supreme Court has not directly addressed this issue, therefore, "[w]here no controlling state decision exists, [we]

-4-

must attempt to predict what the state's highest court would do." See Wade v. EMCASCO Ins. Co., 483 F.3d 657, 665–66 (10th Cir. 2007) (quoting Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)).

Insurance policies are contracts. Yaffe Cos., Inc. v. Great Am. Ins. Co. Inc., 499 F.3d 1182, 1185 (10th Cir. 2007). Oklahoma courts interpret them "in accordance with principles applicable to all contracts." Mansur v. PFL Life Ins. Co., 589 F.3d 1315, 1319 (10th Cir. 2009). "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Okla. Stat. tit. 15, § 157 (2015).

Under Oklahoma law, "a primary insurer generally has the primary duty to defend and indemnify the insured unless specific language in the policy provides otherwise." U.S. Fid. & Guar. Co. v. Federated Rural Elec. Ins. Corp., 37 P.3d 828, 831 (Okla. 2001). Conversely, an excess insurer "provides coverage that is secondary to the primary coverage; there is usually no obligation to the insured until after the primary coverage limits have been exhausted." Id.

## I. Canal's Drop Down Obligation

The terms of the insurance policy Canal issued to Montello are undisputed. Four sections of the policy are relevant to this appeal: the Coverage Section; the Excess Clause & Umbrella Clause, both found within the Underlying Limit–Retained Limits provision; and the Other Insurance Clause.

a. Coverage Section[1]

Rather than reading the Coverage Section in its entirety, Montello focuses exclusively on the introductory clause. ("The company will indemnify the insured for all sums which the insured shall become legally obligated to pay as damages and expenses, all as hereinafter defined as included within the term ultimate net loss.") Montello argues that as a result of Home's insolvency, it has incurred expenses and may become legally obligated to pay damages.

Contrary to Montello's suggested interpretation, the district court read the provision in its entirety and correctly held: "Canal did not undertake to insure the solvency of Montello's primary insurer[.]" Canal Ins. Co., 2013 WL 6732658, at

---

[1] The policy provides:

Coverage: The company will indemnify the insured for all sums which the insured shall become legally obligated to pay as damages and expenses, all as hereinafter defined as included within the term ultimate net loss, by reason of liability,
(a) imposed upon the insured by law, or
(b) assumed by the named insured, or by any officer, director, stockholder or employee thereof while acting within the scope of his duties as such, under any contract or agreement other than liability assumed with respect to occurrences taking place prior to the time such contract or agreement became effective.
because of
(i) personal injury caused by, or
(ii) property damage caused by, or
(iii) advertising liability arising out of
an occurrence which takes place during the policy period anywhere in the world.

I Aplt. App. 38.

*8.  The Coverage Section clearly states that Canal's obligation to indemnify is only triggered by personal injury, property damage, or advertising liability caused by or arising from an occurrence.  The policy defines an "occurrence" as "an accident which takes place during the policy period . . . which causes personal injury, property damage or advertising liability[.]"  I Aplt. App. 38.  We agree with the district court that the "insolvency of the underlying insurer is not an occurrence" as defined in the contract.  Canal Ins. Co., 2013 WL 6732658, at *8.  Montello may be incurring defense expenses and may be legally obligated to pay damages, however, those expenses do not arise from an "occurrence" as defined in the contract.

b. Excess Clause[2]

---

[2] The policy provides:

Underlying Limit - Retained Limits: The company shall be liable only for ultimate net loss resulting from any one occurrence in excess of either
(a) the amounts of the applicable limits of liability of the underlying insurance as stated in the Schedule of Underlying Insurance Policies less the amount, if any, by which any aggregate limit of such insurance has been reduced by payment of loss, hereinafter called the underlying limit, or
(b) if the insurance afforded by such underlying insurance is inapplicable to the occurrence, the amount stated in the declarations as the retained limit.
The limits of liability of any underlying insurance policy shall be deemed applicable irrespective of any defense which the underlying insurer may assert because of the insured's failure of comply with any condition of the policy subsequent to an occurrence.

The Excess Clause is clear: When the underlying insurer's limits are reduced by payment of loss, Canal's liability is triggered. The underlying insurer's inability to pay is not payment of loss. Mission Nat'l Ins. Co. v. Duke Transp. Co., Inc., 792 F.2d 550, 553 (5th Cir. 1986) (citing Molina v. U.S. Fire Ins. Co., 574 F.2d 1176, 1178 (4th Cir. 1978)).

On appeal, Montello argues the district court misread the term "applicable" in the Excess Clause. Montello suggests Home's insolvency renders the underlying limits of liability no longer "applicable." According to Montello, if there are no applicable underlying limits, there is nothing to exhaust. If there is nothing to exhaust, then there is nothing preventing Canal from dropping down. Montello offers two grounds supporting Canal's drop down obligation.

First, Montello relies on Gulezian v. Lincoln Insurance Co., 506 N.E.2d 123 (Mass. 1987), where the court found ambiguity and relied on an "other insurance" provision to hold that the excess policy drops down if the underlying insurance is uncollectible through no fault of the insured. As noted by the district court, Gulezian is unpersuasive because it rests upon an ambiguity we do not perceive and it is also distinguishable because the applicable policies lack similar language. Canal Ins. Co., 2013 WL 6732658, at *13–14. Moreover, Gulezian has been criticized and represents a minority view. See Barrett v. Chin, 843 F. Supp.

---

I Aplt. App. 38.

783, 786 (D. Mass. 1994) (indicating that subsequent decisions "signal a direction different from Gulezian").

Second, Montello argues that the absence of language in Canal's policy expressly preventing drop down coverage signals that the inverse must be true: insolvency must trigger the excess insurers' drop down obligation. This *argumentum ex silentio* is weak and generally unpersuasive. See Karahalios v. Def. Language Inst./Foreign Language Ctr. Presidio of Monterey, 821 F.2d 1389, 1392 (9th Cir. 1987). It is common for courts to hold that excess insurers have no obligation to drop down, even when the contract does not expressly prohibit it. See, e.g., Cont'l Marble & Granite v. Canal Ins. Co., 785 F.2d 1258, 1259 (5th Cir. 1986).

### c. The Umbrella Clause

An umbrella policy "provide[s] primary coverage for risks that the underlying policy does not cover." Mid-Continent Cas. Co. v. Circle S Feed Store, LLC, 754 F.3d 1175, 1179 (10th Cir. 2014) (quoting 15 Steven Plitt et al., Couch on Insurance § 220:32 (3d ed. 2013)). The Umbrella Clause in the Canal policy is no exception. For Canal's umbrella policy to apply, the underlying insurance must be inapplicable to the occurrence. Home's policies provided coverage for asbestos related claims, making them applicable to the occurrence. As we have explained elsewhere, the district court was correct in its determination that "Home's insolvency is not an occurrence to which the

underlying policy is inapplicable because it is not an occurrence at all." Canal

Ins. Co., 2013 WL 6732658, at \*12 (citing Value City, Inc. v. Integrity Ins. Co.,

508 N.E.2d 184, 188 (Ohio Ct. App. 1986)).

d. Other Insurance Clause[3]

An Other Insurance Clause is a "standard provision intended to limit the

excess insurer's liability in the event that insurance other than the scheduled

underlying insurance is available to the insured." Alaska Rural Elec. Co-op

Ass'n, Inc. v. INSCO Ltd., 785 P.2d 1193, 1196 (Alaska 1990). It is not intended

to expand an excess or umbrella insurer's liability. Given this backdrop, the

district court correctly held the Other Insurance Clause "does not require Canal to

assume the obligations of underlying insurers listed in the Schedule of Underlying

Policies simply because those insurers are no longer able to fulfill their

obligations." Canal Ins. Co., 2013 WL 6732658, at \*13. Other courts

interpreting nearly identical provisions have reached the same conclusion. See,

---

[3] The policy provides:

> Other Insurance: The insurance afforded by this policy shall be
> excess insurance over any other valid and collectible insurance
> available to the insured, whether or not described in the Schedule of
> Underlying Insurance Policies, (except insurance purchased to apply
> in excess of the sum of the underlying limit or retained limit and the
> limit of liability hereunder) and applicable to any part of ultimate net
> loss, whether such other insurance is stated to be primary,
> contributing, excess or contingent . . .

I Aplt. App. 40.

e.g., <u>Steve D. Thompson Trucking, Inc. v. Twin City Fire Ins. Co.</u>, 832 F.2d 309, 311 (5th Cir. 1987); <u>Holland v. Stanley Scrubbing Well Serv.</u>, 666 F. Supp. 898, 901 (W.D. La. 1987).  It would be inequitable to read an other insurance clause as insuring the solvency of the underlying primary insurer.

On appeal, Montello focuses on the phrase "valid and collectible" in the Other Insurance Clause.  It argues Home's insolvency rendered the underlying insurance invalid and uncollectible, requiring Canal to drop down and provide primary insurance.  When the term "collectible" appears in an excess insurance clause, some, but not all, courts interpret the provision in the manner Montello suggests.  <u>See, e.g.</u>, <u>Mission Nat'l Ins. Co.</u>, 792 F.2d at 553;  <u>Gulezian</u>, 506 N.E.2d at 124–26.  <u>But see</u> <u>Ambassador Assocs. v. Corcoran</u>, 589 N.E.2d 1258 (N.Y. 1992).  Here, however, the term "collectible" appears only in the Other Insurance Clause.  This isolated use of the word is not enough to "transmogrify the policy into one guaranteeing the solvency of whatever primary insurer the insured might choose."  <u>Cont'l Marble & Granite</u>, 785 F.2d at 1259; <u>see also</u> <u>Steve D. Thompson Trucking Inc.</u>, 832 F.2d at 311.

Alternatively, Montello argues because courts must read contracts as a whole, the term "valid and collectible" found in the Other Insurance Clause should be considered when interpreting the Excess and Umbrella Clauses.  This, however, does not allow us to modify the contracts and impose such an obligation throughout the contract given the applicable provisions.

-11-

e. Defense Coverage[4]

Canal's duty to defend is outlined in the Endorsement for Defense Coverage.  It arises only when: "1) the defense involves a claim for which the Canal Policies provide coverage; and 2) there is no underlying insurer obligated to defend."  Canal Ins. Co., 2013 WL 6732658, at *15.  This comports with the traditional view that an "excess insurer is not required to contribute to the defense of the insured so long as the primary insurer is required to defend." ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 135 (4th Cir. 2006) (quoting Barry R. Ostrager & Thomas R. Newman, Handbook on Insurance Coverage Disputes 188 (5th ed. 1992)).

The district court correctly held the excess insurer's duty to defend does not arise as a result of the primary insurer's inability to defend.  See Harville v. Twin City Fire Ins. Co., 885 F.2d 276, 279 (5th Cir. 1989).  Montello attempts to distinguish the case relied on by the district court, Harville v. Twin City Fire

---

[4]  The policy provides:

Defense Coverage: With respect to such insurance as is afforded by this policy, if there is no underlying insurer obligated to do so, the Company shall:
(a) defend any suit against the Insured alleging personal injuries (including death resulting therefrom), property damage or advertising liability and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent . . .

I Aplt. App. 44.

Insurance Co., by noting the primary insurer in <u>Harville</u> was placed in receivership while the primary insurer in the present action, Home, had its contracts discharged by a New Hampshire court. <u>Id.</u> Montello argues that the court's cancellation of Home's contracts is tantamount to a cancellation of any obligation under the contract. This distinction, however, does not invalidate the basic principles from <u>Harville</u> relied on by the district court. The <u>Harville</u> court reached its ultimate conclusion by looking not at the specifics of the primary insurer's insolvency, but rather, at the purpose of excess insurance generally. Excess insurers are able to provide insurance with low premiums because the premium is "held down by the fact that the duty to defend rests primarily on the primary insurer, falling on the excess liability carrier only when the primary carrier is not required to defend because the loss is not covered by the primary policy." <u>Id.</u> at 279. The implications resulting from requiring an excess insurer to insure the solvency of a primary insurer would be widespread: "Such a 'rule would require insurance companies to scrutinize one another's financial well-being before issuing secondary policies.'" <u>Id.</u> (quoting <u>Cont'l Marble & Granite</u>, 785 F.2d at 1259). In the present case, the language of the defense endorsement is clear: the excess insurer must provide defense coverage only when the extent of the underlying insurer's obligations have been satisfied.

### f. Reasonable Expectations

In the alternative, Montello urges the court to determine the contract is

ambiguous and apply the reasonable expectations doctrine. In Oklahoma, the doctrine of reasonable expectations applies only when there is ambiguity in the contract. See Simpson v. Farmer Ins. Co., Inc., 981 P.2d 1262, 1265 (Okla. 1999). Ambiguity arises where a word or phrase is reasonably susceptible to more than one construction, however, a "court should not torture the language of the policy in order to create ambiguities." E. Associated Coal Corp. v. Aetna Cas. & Sur. Co., 632 F.2d 1068, 1075 (3d Cir. 1980); see, e.g., Morgan Stanley Grp. Inc. v. New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000). If the doctrine applied in every case, "insureds could develop a 'reasonable expectation' that every loss will be covered by their policy and courts would find themselves engaging in wholesale rewriting of insurance policies." Max True Plastering Co. v. U.S. Fid. & Guar. Co., 912 P.2d 861, 868 (Okla. 1996). In the event ambiguity is found, "the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean." Spears v. Shelter Mut. Ins. Co., 73 P.3d 865, 868 (Okla. 2003).

Montello finds ambiguity in the relationship of the policy provisions to one another. Specifically, Montello contrasts the Underlying Limits Clause with the Other Insurance Clause, arguing that the former does not consider the solvency of the underlying insurer while the latter does.

This argument is unpersuasive. As previously discussed, the Other Insurance Clause is not ambiguous and is inapplicable in the current case. It can

be read in conjunction with the remainder of the contract as limiting the insurers' liability when other applicable insurance exists.

Even if we were to determine there was ambiguity, which we do not, it is clear that Montello was buying excess, not primary, insurance from Canal. We believe that Oklahoma would follow the clear majority rule: "the excess insurer is not required to 'drop down' to assume the primary insurer's coverage obligations" when the primary insurer becomes insolvent. Canal Ins. Co., 2013 WL 6732658, at \*5. A reasonable person in the position of the insured would have understood the contract to provide excess and umbrella coverage, not coverage insuring the solvency of the primary insurer.

## II. Houston General's Drop Down Obligation

The provisions in the Houston General Policies are, in relevant part, similar to the Canal Policies. Id. at \*17. Montello raises no arguments on appeal unique to Houston General. Therefore, the holdings with regard to Canal's liability apply to Houston General.

## III. Continental's Lost Policy

Under Oklahoma law and the Federal Rules of Evidence, when originals are lost or destroyed, a duplicate or other evidence of the contents of a contract are admissible. Okla. Stat. tit. 12, § 3004 (2015); Fed. R. Evid. 1004. In a case of a lost insurance policy, Oklahoma directs that the beneficiary has "the burden of establishing by a preponderance of the evidence the existence of the insurance

-15-

contract." State Mut. Life Assurance Co. of Am. v. Hampton, 696 P.2d 1027, 1034 (Okla. 1985). Typically, "[t]o sustain its burden in a 'lost policy' case, an insured must present secondary evidence establishing both the issuance and terms of the policy[.]" Century Indem. Co. v. Aero-Motive Co., 254 F. Supp. 2d 670, 680 (W.D. Mich. 2003).

Regarding expert testimony, we review de novo "whether the district court employed the proper legal standard and performed its gatekeeper role," and we review for an abuse of discretion the manner in which the district court performs this gatekeeping role. See United States v. Rodriguez-Felix, 450 F.3d 1117, 1122 (10th Cir. 2006). A trial court has broad discretion in "deciding how to assess an expert's reliability . . . as well as in making the ultimate determination of reliability." Goebel v. Denver & Rio Grande W. R.R. Co., 346 F.3d 987, 990 (10th Cir. 2003) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999)). "Accordingly, we will not disturb the district court's ruling unless it is 'arbitrary, capricious, whimsical or manifestly unreasonable[.]'" Id. (quoting Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir. 2003)).

The district court held that Montello lacked sufficient evidence to establish the terms of a lost policy. Montello argues that the district court erred because it provided two independent grounds, each demonstrating by a preponderance of the evidence, the terms of the lost policy.

First, Montello sought to establish the terms and conditions of the lost

-16-

policies through an expert, Robert Hughes. The district court granted a motion to strike holding that his "methodology in determining the terms and conditions of the alleged policies is not based on facts which would enable him to express a reasonably accurate conclusion as required by Daubert and its progeny." Canal Ins. Co., 2012 WL 4891699, at *10. This holding was based on numerous factors: Mr. Hughes' concession that the information provided could not be used to identify the wording of a particular form policy; his failure to review a Continental umbrella policy actually issued in Oklahoma; his admission that the form used could have been form E, form D, or some other form; his change in position as to which form was likely the form used; and his admission that the missing policies could have been modified with any number of other, unknown endorsements that could add or limit coverage. Id. at *7–10.

Second, Montello argues Continental's submission of its form policies to the Oklahoma Board of Insurance Commissioners and the Board's approval of those policies establishes the terms of the policies by a preponderance of the evidence. This argument, however, is problematic for Montello because evidence that one form was submitted by Continental does not foreclose the possibility of other submissions. Absent evidence that only one form was submitted and approved during the relevant period, the terms of the lost form remain unclear. Furthermore, Montello's own expert, Mr. Hughes, stated in his report that there was more than one umbrella policy in use by Continental during the relevant

-17-

period.  III Aplt. App. 503.  Montello cites to a variety of cases where submission of a form policy to a state board was sufficient evidence of the terms of a contract.  Each case, however, demonstrated only one version of the contract was in use during the time period when the lost policy was issued.  See, e.g., Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 92-93 (2d Cir. 2002); Servants of Paraclete, Inc. v. Great Am. Ins. Co., 857 F. Supp. 822, 828-29 (D.N.M. 1994).  Montello has failed to provide sufficient information on which a reasonable jury could find the terms of the lost policy by a preponderance of the evidence and therefore, we affirm the district court.

### IV. Motion to Dismiss

Article III of the United States Constitution limits a federal court's jurisdiction to those cases in which there is a live controversy.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  We must assess "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Columbian Fin. Corp. v. BancInsure, Inc., 650 F.3d 1372, 1376 (10th Cir. 2011) (quoting MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)).

The district court correctly dismissed the present action for a lack of case or controversy noting that the "the existence of a duty to defend and indemnify Montello is contingent on future events, which have not and may never take

place." <u>Canal Ins. Co.</u>, No. 10-cv-411-JHP-TLW at 2.  Montello appeals, claiming a number of issues remain.  Because we hold that the excess policies do not drop down, all of these issues are hypothetical until the underlying primary insurance is exhausted by payment of loss.  This is the point at which the excess insurance attaches.  <u>Canal Ins. Co.</u>, 2013 WL 6732658, at *16.  Because any case or controversy arising from the underlying litigation remains contingent on occurrences that may never happen, we conclude that the district court properly dismissed the action.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge