18-1280-cv
*Keller Founds., LLC v. Zurich Am. Ins. Co.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of December, two thousand eighteen.

Present:
> AMALYA L. KEARSE,
> DEBRA ANN LIVINGSTON,
> SUSAN L. CARNEY,
> *Circuit Judges*.

─────────────────────────────────────────

KELLER FOUNDATIONS, LLC, HAYWARD BAKER, INC., KELLER GROUP PLC,

> *Plaintiffs-Appellants*,

v.                                                                18-1280-cv

ZURICH AMERICAN INSURANCE COMPANY,

> *Defendant-Appellee*.

─────────────────────────────────────────


For Plaintiffs-Appellants:          BETHANY L. BARRESE, (Tracy Alan Saxe, *on the brief*), Saxe, Doernberger & Vita, P.C., Trumbull, CT.

For Defendant-Appellee:          CECILIA F. MOSS, (Peter R. Chaffetz, Karen C. Baswell, *on the brief*), Chaffetz Lindsey LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Keller Foundations, LLC ("Keller"), Hayward Baker, Inc. ("HBI"), and Keller Group PLC ("Keller Group") (collectively, "Plaintiffs") appeal from a judgment filed on March 29, 2018 in the United States District Court for the Southern District of New York dismissing their Amended Complaint against Defendant-Appellee Zurich American Insurance Company ("Zurich") in its entirety. *Keller Founds., LLC v. Zurich Am. Ins. Co.*, 2018 WL 1605077 (S.D.N.Y. Mar. 29, 2018). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, and discuss them here only to the extent necessary to explain our decision.

At the outset, two other lawsuits are relevant to the disposition of this case. First, on or around August 5, 2011, general contractor Diaz Fritz Isabel ("Diaz") filed a lawsuit against HBI, its subcontractor, in Florida state court (the "Diaz/HBI suit") for breach of contract. HBI sought coverage from Zurich pursuant to the commercial general liability insurance policy it issued to Keller (the "Policy"), under which HBI was also a named insured. Zurich has paid, and continues to pay, for HBI's defense in connection with the suit, which is ongoing. Zurich has not yet paid any indemnity on behalf of HBI in the Diaz/HBI suit, but Plaintiffs do not allege that they have asserted (or Zurich has denied) any such claim.

Regarding the second lawsuit, on December 20, 2011, Diaz made a demand on Zurich for coverage as an additional insured under the Policy, which Zurich denied on February 10, 2012. On or around February 15, 2012, Diaz filed suit against Zurich (the "Diaz/Zurich suit"). Diaz

claimed that it (1) was entitled to additional insured coverage under the Policy, and (2) should be allowed to amend its complaint to add a bad faith claim against Zurich, for Zurich's bad faith refusal to defend Diaz in the Diaz/HBI suit. Diaz later settled its case against Zurich for $450,000 and agreed to release "all claims which were or which could have been brought against [Zurich] in the [Diaz/Zurich suit] and any ensuing claims for bad faith by [Diaz] against [Zurich]." A274 (Compl. ¶ 44-45).

After settling the case with Diaz, Zurich sought and obtained reimbursement for the settlement from reinsurer Capital Insurance Limited ("Capital"), pursuant to its reinsurance agreement regarding the Policy (the "Reinsurance Agreement"). Capital, like Keller and HBI, is owned by Keller Group. According to the allegations in the Amended Complaint, "[b]ecause Capital is fully funded by Keller Group, Keller Group was obligated to reimburse Capital for the amounts Capital reimbursed to Zurich . . . ." *Id.* at 275 (¶ 57). Furthermore, "[p]ursuant to their obligations, Keller and HBI each reimbursed Keller Group for a portion of the amounts Keller Group reimbursed to Capital," while "Keller also paid a GPB 50,000 deductible toward the settlement payment to Diaz." *Id.* at 276 (¶ 59, 60). Following Zurich's settlement and application for reimbursement from Capital, Plaintiffs brought this suit in the district court, alleging contract and contract-related claims and seeking a declaration that the payment made by Zurich to settle the Diaz/Zurich suit was not covered by the Policy. Zurich successfully moved to dismiss on the basis of Federal Rule of Civil Procedure 12(b)(6), *see Keller*, 2018 WL 1605077, and this appeal followed.

\*     \*     \*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

3

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While we must accept as true all allegations in a plaintiff's complaint, *id.*, a plaintiff still must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## Breach of Contract Claims

Plaintiffs first claim that Zurich breached its duties under the Policy by settling the Diaz/Zurich suit and applying for reimbursement for that settlement from Capital. "In order to survive a motion to dismiss for failure to state a breach of contract claim [under Delaware law, applicable here], the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). The district court determined that Keller and HBI failed on the second prong of this test, as they did not allege a breach of any obligation imposed by the Policy. We agree.

Zurich makes the following principal commitments in the Policy:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

A68 (Policy). Accordingly, pursuant to the Policy Zurich is required to (1) pay specified damages that Plaintiffs are obligated to pay, and (2) defend Plaintiffs in any suit that seeks such damages. Plaintiffs have not alleged that Zurich has failed to perform either of those duties.

4

Keller and HBI argue Zurich's conduct with regard to the Diaz/Zurich suit constituted a breach, on the theory that Zurich had a duty not to "use Policy funds to defend and settle a claim that sought to impose liability on Zurich itself." Pls.-Apps.' Brief 9. While not deciding the issue, we note, as did the district court, that the Policy "does not bar Zurich from settling . . . claims" but, to the contrary, gives it "broad discretion" to do so. *Keller*, 2018 WL 1605077 at *5. Moreover, even assuming *arguendo* that settlement of the Diaz/Zurich suit violated some contractual duty, the Plaintiffs have not alleged any damages flowing from that settlement. Plaintiffs do not allege that Zurich has refused to defend or indemnify them because of its settlement of the Diaz/Zurich suit, nor even that Zurich's settlement of that suit put Plaintiffs over the Policy's limits. If that were the case, then Plaintiffs might be entitled to bring a breach of contract suit for *that* failure to defend or pay. *See id.* ("Plaintiffs' conjecture that Zurich may one day treat the Diaz settlement as reducing the pool of 'policy funds' available to settle other claims under Policy does not make out a *present* claim of a breach of a contractual duty owed to plaintiffs.") (emphasis added).

Keller and HBI argue that they were damaged because, pursuant to "obligations," Keller had to pay a GBP 50,000 deductible under the Reinsurance Agreement, and both had to pay a portion of the settlement amount Zurich requested from Capital to their parent company Keller Group. A276 (¶ 58-60), 278 (¶ 71). However, payment of these sums was not due to any breach of the Policy, as such payments do not relate to Zurich's duty to defend or indemnify Plaintiffs; instead, they flow from Capital's choice to reimburse Zurich under the Reinsurance Agreement, as well as whatever arrangements exist for inter-company reimbursements between Keller Group and its subsidiaries. While Plaintiffs argue that Capital had no discretion to refuse to pay Zurich under the Reinsurance Agreement, this is both (1) irrelevant and (2) belied by the

5

terms of the Reinsurance Agreement itself, which was attached to the Amended Complaint. Under the terms of the Reinsurance Agreement, Capital is liable to Zurich only "in respect to all liability assumed by the Company *under the terms and conditions of the Original Policies* and in accordance with Clause 3, Reinsurance Accepted." A130 (emphasis added). If Capital thought that Zurich was requesting reimbursement for something not covered under the Policy, then ostensibly it could go to arbitration in London, where the parties agreed to arbitrate "[a]ll disputes and differences arising under or in connection with this Agreement." *Id.* at 131.

The district court dismissed Keller Group's breach of contract claim against Zurich on the ground that Keller Group had not plausibly alleged that it was an intended third-party beneficiary of the Policy.[1] *Keller*, 2018 WL 1605077 at *7. We again agree. According to Delaware law, "[t]o create third party beneficiary rights, a contract should confer an intended benefit on the third party, and the conferral of such benefit must be a material part of the contract's purpose." *Greater N.Y. Mut. Ins. Co. v. Travelers Ins. Co.*, 2011 WL 4501207 at *3 (D. Del. Sept. 28, 2011); *see also Insituform of N. Am., Inc. v. Chandler*, 534 A.2d 257, 270 (Del. Ch. 1987). As the district court noted, all allegations in the Amended Complaint surrounding Keller Group's third-party beneficiary status were essentially threadbare recitals of the above-listed requirements. *See, e.g.,* A278-79 (Am. Compl. ¶ 73-77) ("Zurich knew, or should have known, that Keller's motivation in purchasing the Policy was, in part, to benefit

---

[1] The district court also rejected Keller's argument that the Amended Complaint plausibly alleged that it was a named insured on the Policy, finding such a theory was not fairly contained in the allegations of the Amended Complaint. *Keller*, 2018 WL 1605077 at *8; *see also Dietrich v. Bauer*, 76 F. Supp. 2d 312, 328 (S.D.N.Y. Mar. 4, 1999) ("Matters suggested in [plaintiff's] opposing papers that interpret allegations in the Amended Complaint broadly or facts that are offered but that do not appear in the Amended Complaint will not be considered [on a 12(b)(6) motion]."). We agree that Plaintiffs' Amended Complaint cannot fairly be read to contain such an allegation.

Keller's parent company Keller Group."). These allegations do not contain sufficient facts to state a plausible claim that "a material purpose for the Policy" was to confer a benefit on Keller Group. *See Keller*, 2018 WL 1605077 at *8; *see also E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196-97 (3d Cir. 2001) ("Although [the parent company] . . . would certainly benefit from the success of [its subsidiary], [the parent company] was not an intended third party beneficiary of the Agreement any more than any parent who expects to benefit from the success of the business ventures of its subsidiary.").

**Breach of the Duty of Good Faith**

Next, Plaintiffs argue that there are two alleged instances of a breach of the duty of good faith on Zurich's part: (1) that Zurich acted in bad faith when it declined to defend Diaz under the Policy, as alleged by Diaz; and (2) that Zurich acted in bad faith "by using Policy funds to resolve" Diaz's claims against Zurich. Pls.-Apps.' Brief 15. Under Delaware law, "the implied covenant [of good faith] requires a party in a contractual relationship to refrain from arbitrary and unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain." *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotation marks omitted). However, "implied good faith cannot be used to circumvent the parties' bargain, or to create a 'free-floating duty . . . unattached to the underlying legal document.'" *Id.* at 441(internal footnotes and citations omitted).

The district court correctly rejected any contention that Zurich's settlement of the Diaz/Zurich suit, in and of itself, was arbitrary or unreasonable. *See Keller*, 2018 WL 1605077 at *9 ("[I]t was reasonable for plaintiffs to expect that a rational economic actor, such as Zurich,

7

might settle, on reasonable terms, a claim of bad faith."). And to the extent Plaintiffs claim that "it is not reasonable to expect that Zurich might settle a claim of bad faith *using Policy funds*," Pls.-Apps.' Brief 16 (emphasis in original), it is unclear how such actions prevented Plaintiffs from "receiving the fruits of their bargain" with Zurich. Again, there are no allegations that Zurich has since refused to defend or indemnify Plaintiffs because the Diaz/Zurich settlement put them over the Policy cap. And bad faith related to Zurich's submission of that settlement to Capital for reimbursement is related to the Reinsurance Agreement, as opposed to the *Policy*. We thus agree with the district court that permitting Plaintiffs to proceed with their claim for breach of the duty of good faith would essentially constitute recognition of a "free-floating duty," unmoored from the language of the contract at issue, and contrary to Delaware law.

**Request for Declaratory Relief**

Lastly, Plaintiffs argue that the district court erred when it declined their request that the district court "declare that the payment made by Zurich pursuant to the Settlement Agreement was not covered by the Policy." A281 (¶ 91). "We review a district court's decision of whether to exercise jurisdiction over a declaratory judgment action deferentially, for abuse of discretion." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005). Abuse of discretion exists if a district court "bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact." *Id.* (internal quotation marks omitted). Neither is present here.

When the district court declined to hear Plaintiffs' claim for declaratory relief it concluded that Plaintiffs had not made any of the following allegations (or ones similar to them), which might potentially have made their claim ripe:

8

> (1) Zurich and plaintiffs actually dispute whether the Diaz settlement, to the extent it covers bad-faith claims that Diaz could have brought against Zurich, are covered by the Policy; (2) any harm will come to plaintiffs under the Policy if Zurich treats the Diaz settlement (in whole or in part) as falling within the Policy—*e.g.*, that there is a cap on payouts under the Policy that would be approached or crossed were the Diaz settlement treated as covered by the Policy; (3) such cap for the Policy year in question is likely to be reached; or (4) there are any claims on the Policy that plaintiffs have made or have any expectation of making.

*Keller*, 2018 WL 1605077 at *9. Plaintiffs contend, in contrast, that the very first allegation listed by the district court "*is exactly what Zurich and the Appellants dispute.*" Pls.-Apps.' Brief at 21 (emphasis in original). Furthermore, Plaintiffs argue that their claim on the Policy for the Diaz/HBI suit (which Zurich is currently defending) constitutes the sort of fact that fits in the fourth category. *Id.* In essence, Plaintiffs argue that the district court misunderstood their Amended Complaint.

Again, we disagree. Based on our own independent review of the Amended Complaint, we conclude that Plaintiffs, who bear the burden of demonstrating that the district court has jurisdiction over their declaratory judgment claim, have not plausibly demonstrated a "practical likelihood" that, even if Zurich treats, or continues to treat, the Diaz settlement as falling under the Policy, they will suffer any harm from that determination. *See E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) ("A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction."); *Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (instructing that "courts should focus on the practical likelihood that the contingencies [underlying the claim of liability] will occur") (internal quotation marks omitted). This case concerns a Policy that covered a period ending over eight years ago, and Plaintiffs have alerted us to only one outstanding claim on that

9

Policy—the Diaz/HBI suit. If in fact that suit is likely to put Plaintiffs over the Policy cap of $5,000,000 in light of the Diaz/Zurich settlement, Plaintiffs should have been able to plead at least *some facts* to demonstrate that possibility. Given that they have not, Zurich is correct that Plaintiffs' request for a declaration "simply reiterates [Plaintiffs'] breach of contract claim and does not seek resolution of any separate dispute." Def.-App.'s Brief at 28-29. The district court did not err in declining to exercise jurisdiction over this claim.

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk